No. 96-261

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

PATRICIA ELAINE MYSSE,

      Plaintiff and Appellant,

    v.

DUANE C. MARTENS, MARK PINKERTON,
DONALD P. BAILEY, individually and
as Public Officers, and ROSEBUD COUNTY,
a Montana Political Subdivision,

      Defendants and Respondents.



APPEAL FROM:  District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        K. D. Peterson; Peterson & Schofield, Billings,
        Montana

    For Respondents:

        Steven J. Lehman; Crowley, Haughey, Hanson, Toole
        & Dietrich, Billings, Montana

Submitted on Briefs:  August 15, 1996

Decided:  November 14, 1996

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Patricia Mysse (Mysse) appeals from the order of the Sixteenth Judicial District Court, Rosebud County, granting Defendants' motion for summary judgment on all counts. We affirm.

We consider the following issues on appeal:

1. Did the District Court err in dismissing Mysse's due process claims under 42 U.S.C. § 1983?

2. Did the District Court err in dismissing Mysse's wrongful discharge claim under the Montana Wrongful Discharge Act?

3. Did the District Court err in dismissing Mysse's age discrimination claim under 29 U.S.C. § 623?

4. Did Mysse raise any valid tort claims or a valid claim for breach of the covenant of good faith and fair dealing?

Factual and Procedural Background

Mysse's claims arise out of her termination from her position as Coordinator for the Rosebud County Council on Aging. Mysse was originally hired by Rosebud County in 1972 for a six-month pilot program to provide transportation for senior citizens in Rosebud County. She was 49 years old when she was hired. At the end of the six-month period she was hired to continue the program for an indefinite term. In 1978 she received her job description from an organization entitled Action for Eastern Montana which works with senior citizens in the seventeen counties situated in eastern Montana. She operated under two separate job descriptions, one for Coordinator and one for Transportation.

2

The Coordinator job description contained a requirement that Mysse create a transportation schedule. It also required the employee to carry out other assignments at the direction of the County Commission on Aging. The Transportation job description contained a requirement that the employee make the schedule available to the public through newspaper and radio advertising. Both job descriptions required that the employee possess an acceptable mode of transportation, a Montana chauffeur's license, and freedom to travel. Both job descriptions contained methods for mileage reimbursement.

For nineteen years Mysse transported senior citizens in her own automobile upon request. She never transported more than three senior citizens at one time. She never established a schedule but, instead, advertised in the paper that transportation was available upon request and arranged transportation accordingly.

In 1990, the Rosebud County Board of Commissioners (Board) surveyed senior citizens on their transportation needs in consideration of using grant monies to purchase a bus. Mysse believed that the Senior Citizen program did not need the bus. She voiced her opposition to the purchase of the bus to the Board. Mysse later testified that she explained to the Board that she was never able to get more than three persons together at any one time and she believed that the bus, which held twelve people, could not be used or coordinated effectively. Although the Board purchased the bus in 1990, Mysse continued to transport senior citizens in her own automobile without making a set schedule.

3

On January 24, 1992, at a Rosebud County Board meeting, the Board informed Mysse about complaints received from senior citizens regarding her non-use of the bus. At least one representative of Action for Eastern Montana was at the meeting and indicated that if the bus was not used for the transportation of seniors, the County could lose the bus due to the fact that it was purchased with specific grant monies. The Board informed Mysse that arranging a bus schedule and driving the bus were conditions of her job in general, and significant responsibilities of her job as Transportation Coordinator.

Mysse was given an opportunity to respond at the meeting. She stated that she would not drive the bus and that she would not create a schedule as she did not think a schedule would work. The Board told her she would either have to drive the bus or she would lose her job. Thereafter, Mysse informed the Board she was quitting. The Board then asked her to reconsider and to either try driving the bus herself, or to find volunteers willing to drive the bus.

The Board sent Mysse a letter the same day giving her notice that she had to arrange a regular bus schedule and drive the bus or that she would be discharged from her employment with Rosebud County. The letter further informed her that she had three days to respond either in person or by written response. Mysse did not respond and on January 29, 1992, the Board sent her a termination letter setting out the specific reasons for the dismissal. The stated reasons were her refusal to comply with the terms of her job

4

description in scheduling and driving the senior citizen bus. The letter informed her that if she thought she had been treated unfairly she could discuss the problem further with the Board. If no resolution could be reached she was to submit a written complaint within five days and she would be afforded an opportunity to be heard and produce witnesses. These procedures were pursuant to Rosebud County's Personnel Policy on Grievance.

Mysse filed a complaint with the Board and approximately thirty days after her termination she appeared at a post-termination hearing. At the hearing Mysse alleged that her termination was illegal and she requested monetary compensation for the balance of her employment through her twenty-year milestone with Rosebud County and for retirement benefits she would have received if she had remained employed for twenty years. Mysse presented various witnesses who testified to her exemplary service throughout her years as Senior Citizen Coordinator. The record is silent as to whether Mysse received any benefits beyond what she earned in her nineteen years of employment with Rosebud County.

Mysse originally filed an age discrimination claim with the Human Rights Commission. Subsequently, Mysse filed a complaint with the Sixteenth Judicial District Court, Rosebud County, alleging deprivation of rights or, in the alternative, wrongful discharge. On September 21, 1993, the Human Rights Commission dismissed her case and issued a right to sue letter. The District Court granted Mysse's motion to file an amended complaint and Mysse filed the amended complaint. The amended complaint alleged

5

deprivation of rights or, in the alternative, discrimination or, in the second alternative, wrongful discharge.

Rosebud County moved for summary judgment. The Honorable Joe L. Hegel, Judge of the Sixteenth Judicial District Court, granted Rosebud County's motion for summary judgment and dismissed all of Mysse's claims. Judgment was entered February 8, 1996. Mysse filed a timely Notice of Appeal.

All of Mysse's claims involve the issue of whether she was terminated for good cause or because of some wrongful action on the part of the Rosebud County Board of Commissioners. The District Court granted summary judgment to the County and the individual Board members because it found that Mysse was discharged for good cause, namely, refusing to obey lawful directives of the Rosebud County Board of Commissioners.

Our standard of review in appeals from summary judgment rulings is de novo. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903. In <u>Bruner</u>, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

6

Bruner, 900 P.2d at 903 (citations omitted).

## Issues

1. Did the District Court err in dismissing Mysse's due process claims under 42 U.S.C. § 1983?

42 U.S.C. § 1983 provides a cause of action for persons deprived of constitutional rights by another person acting under color of state or federal law. The Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 17 of the Montana Constitution, prohibit a government entity from depriving persons of property without due process of law. Mysse claims that she was deprived of her constitutional rights to due process when the Board terminated her employment without a pre-termination hearing. Before Mysse is entitled to due process for the loss of her job she must first demonstrate that she has a protected property interest in her employment.

In Boreen v. Christensen (1994), 267 Mont. 405, 884 P.2d 761, this Court held that administrative regulations of the Department of Military Affairs, mandating that disciplinary action including discharge be taken only for "just cause," created a property interest in employment for the discharged employee. This Court limited its decision in Boreen to only those employees who "can point to some written contract, state law, or regulation which states or otherwise provides a specified term of employment and, hence, a property interest in continued employment." Boreen, 884 P.2d at 770.

In the instant case the parties and the District Court have assumed that the Rosebud County Personnel Policy created a property

7

interest for Mysse. Mysse was hired for an indefinite term after the expiration of her six-month probationary period. The record does not contain the Rosebud County Personnel Policy setting forth the conditions of termination or discharge thus precluding this Court from knowing whether the policy included a "just cause" provision or other term of employment, which would give Mysse a property interest in her employment with Rosebud County. Assuming, *arguendo*, that Mysse possessed a property interest in her continued employment, the next inquiry is whether she was afforded constitutional due process before that property interest was taken away.

In Boreen, this Court examined the United States Supreme Court's analysis of the extent of process due a person who has been terminated from their employment in which he or she enjoyed a property interest. The Court in Cleveland Bd. of Educ. v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, concluded that due process simply required oral or written notice to the employee of the reasons for the termination, including an explanation of the employer's evidence and the opportunity for the employee to respond in "something less" than a full evidentiary hearing before termination, coupled with a full post-termination hearing "at a meaningful time." Loudermill, 470 U.S. at 545-46. The Supreme Court went on to say that the pre-termination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe

8

that the charges against the employee are true and support the proposed action. Loudermill, 470 U.S. at 545-46.

While Mysse has a right to due process, Boreen does not give her a right to a full blown hearing prior to termination. The undisputed facts show that Mysse was afforded written notification of her impending discharge and a pre-termination hearing. At the January 24, 1992, meeting with the Rosebud County Board of Commissioners, Mysse was informed that she would have to create a schedule for the bus and either drive the bus herself or find volunteers to drive the bus or she would be fired. Mysse refused to do either and stated that she would quit. The Commissioners asked her to reconsider and advise them within a few days if she would perform her job duties as requested. This meeting clearly meets the Loudermill requirements of avoiding "mistaken decisions" and ascertaining whether the complaints against the employee are true.

Mysse also was provided a full evidentiary post-termination hearing at which she was allowed to call witnesses on her behalf. The District Court did not err in holding that the Rosebud County Board of Commissioners afforded Mysse her constitutional rights to due process upon termination of her employment. We therefore affirm the dismissal of Mysse's 42 U.S.C. § 1983 claim.

2. Did the District Court err in dismissing Mysse's wrongful discharge claim under the Montana Wrongful Discharge Act?

A discharge is wrongful under the Act only if:

> (1) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

9

(2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or

(3) the employer violated the express provisions of its own written personnel policy.

Section 39-2-904, MCA.

Mysse alleged that her discharge was wrongful under § 39-2-904(2), MCA. The Wrongful Discharge Act defines "good cause" as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties . . . ." Section 39-2-903(5), MCA.

In order for an employee to defeat a motion for summary judgment on the issue of good cause, this Court requires the employee to prove that the given reason for the discharge, such as failure to perform the services the employee was hired to perform, is a pretext and not the honest reason for the discharge. See Coombs v. Gamer Shoe Co. (1989), 239 Mont. 20, 778 P.2d 885, and Cecil v. Cardinal Drilling Co. (1990), 244 Mont. 405, 797 P.2d 232. "*Mere denial or speculation will not suffice*, the non-moving party must show facts sufficient to raise a genuine issue." Cecil, 797 P.2d at 235.

The Board determined that Mysse was not meeting her job responsibilities as described in the job descriptions. She refused to create a transportation schedule and she refused to drive the bus. Although driving the bus was not made an explicit duty in either of the job descriptions it was a reasonable directive given by her employer as part of her overall responsibilities as Transportation Coordinator. No evidence was presented indicating

10

that the purchase of the bus and the requirement that Mysse drive the bus and set up a regular schedule was done for any reason other than to attempt to better serve the senior citizens of Rosebud County.

Mysse's allegations that she was made a "scapegoat" for the County's improvident purchase of the bus is unsupported by any factual basis in the record. Mysse may be inferring that her termination saved money thereby vitiating the Board's "improvident" decision to purchase the bus. However, the fact that the bus was purchased with grant monies and the fact that the Board hired another person to fill Mysse's position after her termination defeats this inference. Mysse's allegations that she was made a "scapegoat" for the County's improvident purchase of the bus is "mere speculation" which does not rise to the level of a "pretext" as defined in Cecil. Mysse's termination was the direct result of her refusal to drive the bus or create a transportation schedule. The Board terminated Mysse because she refused to satisfactorily perform her job duties. This meets the Wrongful Discharge Act's definition of good cause and therefore defeats Mysse's wrongful discharge claim. The District Court did not err in dismissing Mysse's wrongful discharge claim and we therefore affirm the dismissal of this claim.

3. Did the District Court err in dismissing Mysse's age discrimination claim under 29 U.S.C. § 623?

According to the Age Discrimination in Employment Act (ADEA), "it shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. §

11

623(a)(1).

This Court defined the standard for analyzing summary judgment motions on discrimination in Heiat v. Eastern Mont. College (1996), 275 Mont. 322, 331-32, 912 P.2d 787, 793. The plaintiff must first allege a prima facie case. Following the plaintiff's prima facie case:

> If the employer comes forward with a legitimate non-discriminatory reason, the plaintiff must then, *in addition to having alleged a prima facie case in the complaint, produce evidence that establishes her prima facie case as well as evidence which raises an inference that the employer's proffered reason is pretextual.*
> Of course, this does not mean that a plaintiff in a discrimination action always survives summary judgment when the plaintiff calls the employer's proffered explanation into question. Rather than having to demonstrate with specific facts that the employer's explanation "is a pretext," she need only introduce evidence which raises an *inference* that the employer's proffered reason is pretextual. *To create a genuine issue of material fact as to pretext, the plaintiff must not only introduce evidence from which a reasonable person could infer that she is qualified, she must also introduce evidence that casts doubt on the defendant's contention that there was a legitimate business justification for defendant's action.*

Heiat, 912 P.2d at 793 (citations omitted; emphasis added).

Assuming that Mysse alleged a prima facie case of age discrimination in her complaint, Rosebud County, as the moving party on a summary judgment motion, must prove that it had a legitimate nondiscriminatory reason for terminating Mysse.

Even though Mysse may have felt that the purchase of the bus in 1990 was a pretext for terminating her due to her age, the Board had legitimate reasons to purchase the bus. The Board conducted a survey of senior citizens and discovered a need for greater transportation opportunities for the seniors. Moreover, so long as

12

the employer's proffered reason for an adverse employment decision is both honest and nondiscriminatory, its business judgment, no matter how erroneous, cannot be challenged in an age discrimination action. Morton v. Associated Dry Goods Corp. (S.D. Ind. 1992), 792 F.Supp. 1136.

The Board asked Mysse, in her capacity as Transportation Coordinator, to establish a schedule and drive the bus. Mysse refused to do either. Failure to satisfactorily perform job duties (in Mysse's case failure to perform certain duties at all) is a legitimate nondiscriminatory reason for termination of an employee. See Schultz v. General Elec. Capital Corp. (7th Cir. 1994), 37 F.3d 329; Frazer v. KFC Nat'l Management Co. (D.C. Ga. 1980), 491 F.Supp. 1099 (holding that the ADEA neither prevents employer's from changing job responsibilities of older employees nor does it allow older employees to walk out on their jobs and sue the employer for age discrimination because they dislike their changed job responsibilities).

It is undisputed that Mysse was terminated because she refused to follow the directive of the Board to drive the bus and because she refused to perform the explicit duty of setting and advertising a regular schedule for the bus. As the moving party on a motion for summary judgment, Rosebud County met its burden of offering a legitimate nondiscriminatory reason for the discharge.

According to the Heiat test, in order to survive a summary judgment motion in a discrimination case, Mysse had to establish a prima facie case of age discrimination. To establish a prima facie

13

case of age discrimination under the ADEA, a plaintiff must either provide direct evidence of discrimination or produce evidence that:

> (1) she was in the protected age group; (2) she was performing her job satisfactorily; (3) she was discharged; and (4) she was replaced by a substantially younger person. [Citations omitted.]

Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 253, 854 P.2d 326, 330. In the present case Mysse failed to make out a prima facie case of age discrimination. Although she was in the protected age group pursuant to the ADEA when she was discharged, (Mysse was 69 when she was terminated) and replaced by a younger person, she was not performing her job satisfactorily. Since Mysse was not able to establish that she was performing her job satisfactorily, she failed to make out a prima facie case of age discrimination.

Furthermore, Mysse failed to raise an *inference* that Rosebud County's proffered reason was a pretext for the discharge. The only inference of "pretext" offered by Mysse is that the Board "attempted to make her the scapegoat for their improvident spending." Not only was the bus purchased with grant monies, but the Board hired another person to fill Mysse's position after Mysse's termination. This Court fails to see any logical nexus between the Board's "improvident" purchase of the bus and its decision to discharge Mysse. This "scapegoat" theory does not raise an inference of pretext as to the Board's contention that it fired Mysse for legitimate business reasons (Mysse's refusal to perform reasonable job duties). See Heiat, 912 P.2d at 793.

Mysse also alleges that previous to the January 24, 1992,

14

meeting with the Board, one Commissioner asked her if she were going to retire. Mysse concedes that this question arose during casual conversation. This question alone does not give rise to an inference that she was fired for her age rather than fired for refusing to drive the bus. See Bolton v. Scrivener, Inc. (10th Cir. 1994), 36 F.3d 939 (finding that a single comment from a supervisor calling an employee an "old fart" did not show pretext in the employer's decision not to rehire the employee absent a showing of nexus between those comments and the employer's decision not to rehire).

Mysse further alleges that she overheard other senior citizens discussing that she may be too old to drive the bus and that the Board should hire a man to drive the bus. The truthfulness of these allegations is irrelevant as the senior citizens had no part in the decision to discharge Mysse from her job. Age related comments by non-decision makers are not material in showing that an employer's actions are based on age discrimination. Snoey v. Advanced Forming Technology, Inc. (D. Colo. 1994), 844 F.Supp. 1394.

Even if Mysse had made out a prima facie case of age discrimination, she failed to raise an inference that the Board's decision to discharge her for refusing to drive the bus was a "pretext" for discharging her because of her age. We hold that the District Court did not err in granting Rosebud County's motion for summary judgment and therefore we affirm the dismissal of Mysse's age discrimination claim.

15

4.     Did Mysse raise any valid tort claims or a valid claim for breach of the covenant of good faith and fair dealing?

Mysse alleges that the District Court erred by failing to consider or decide other claims and torts alleged by her in her amended complaint.    Mysse claims that her complaint sets forth various tort claims including breach of the covenant of good faith and fair dealing, emotional stress, harassment, humiliation, impairment of reputation, pain and suffering, and punitive damages.

Rosebud County and the individual defendants claim that Mysse did not raise any of these issues as separate claims in her amended complaint, except possibly the claim for breach of the covenant of good faith and fair dealing which, according to Rosebud County, is prohibited from being raised as a separate claim under the Montana Wrongful Discharge Act, § 39-2-902, MCA.    Rosebud County further alleges that Mysse's failure to bring these issues to the District Court's attention in her brief in opposition to their summary judgment motion, or at any other time, forbids her from bringing the issues before this Court for the first time on appeal.

While this Court follows the general rule that complaints are to be construed in a light most favorable to the plaintiff, Kleinhesselink v. Chevron, U.S.A. (Mont. 1996), 920 P.2d 108, 110, 53 St.Rep. 668, this Court also recognizes that:

> a complaint must state something more than facts which, at most, would breed only a suspicion that plaintiffs have a right to relief.  Liberality does not go so far as to excuse omission of that which is material and necessary in order to entitle relief.

Treutel v. Jacobs (1989), 240 Mont. 405, 407, 784 P.2d 915, 916. Mysse's amended complaint alleged the following violations:

16

procedural and substantive due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution, the Constitution of the State of Montana as contained in Article II, §3, Inalienable Rights, §4 Individual Dignity, and §17 Due Process of Law.

Mysse alleges, in her opening brief to this Court, that the above violations stated in her amended complaint, encompass the "Montana constitutional tort claims" that she raises on appeal. While Montana adheres to the notice pleading requirements of "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." (Rule 8(a), M.R.Civ.P.), the claim must give notice to the other party of the facts which the pleader expects to prove, and the facts must disclose the presence of all the elements necessary to make out a claim. See Butte Country Club v. Metropolitan Sanitary & Storm Sewer Dist. No. 1 et al. (1974), 164 Mont. 74, 77, 519 P.2d 408, 409; Story Gold Dredging Co. v. Wilson (1935), 99 Mont. 347, 42 P.2d 1003; Union Bank & Trust Co. v. Himmelbauer et al. (1923), 68 Mont. 42, 216 P. 791; accord Jones v. Community Redevelopment Agency of the City of Los Angeles (9th Cir. 1984), 733 F.2d 646 (interpreting Federal Rule 8(a)(2), Fed.R.Civ.P.).

Mysse in no way indicated in the complaint how her discharge from Rosebud County formed the basis of any of the specific torts she refers to in her appellate brief and claims to have raised in the complaint. Mysse's indication that certain of her federal and state constitutional rights were violated did not give the defendants notice that Mysse was claiming intentional infliction of emotional distress, tortious interference with contract, or any

17

other tort claim. We hold, therefore, that Mysse's complaint did not adequately aver the tort claims of intentional infliction of emotional distress, tortious interference with employment, or any other tort claim. Because Mysse did not adequately raise the claims of intentional infliction of emotional distress, tortious interference with contract, or any other tort claim in her complaint or at any time to the District Court, these claims are barred from being raised for the first time on appeal. See Deist v. Wachholz (1984), 208 Mont. 207, 678 P.2d 188.

The only claim set out specifically in the complaint which Mysse alleges the District Court improperly ignored is the claim for breach of the implied covenant of good faith and fair dealing. Rosebud County alleges that Mysse's claim of breach of the covenant of good faith and fair dealing was either necessarily a part of her claim under 42 U.S.C. § 1983, or if asserted as an independent claim, that it was prohibited by the Montana Wrongful Discharge From Employment Act (WDFEA), §§ 39-2-901 et seq., MCA.

The WDFEA is the exclusive remedy for a wrongful discharge in Montana. See § 39-2-902, MCA. The WDFEA provides that no claim for discharge may arise from common-law remedies such as tort or express or implied contract. See § 39-2-913, MCA. However, the WDFEA does not limit a claimant's right to plead an *independent cause of action* in conjunction with a claim under the Act. See Beasley v. Semitool, Inc. (1993), 258 Mont. 258, 853 P.2d 84 (holding that an employee's claim for breach of the covenant of good faith and fair dealing arising out of compensation-related

18

agreements was not barred by the WDFEA because the claims were not for damages caused by an asserted wrongful *discharge*); see also Dagel v. City of Great Falls (1991), 250 Mont. 224, 819 P.2d 186 (holding that the employee's claims for breach of the covenant of good faith and fair dealing, accruing after the effective date of the WDFEA, and arising out of the *discharge*, were barred by the WDFEA).

As in Dagel, Mysse alleges no separate circumstances apart from her discharge to support a claim of breach of the implied covenant of good faith and fair dealing. Mysse's only complaint against Rosebud County that could constitute a breach of the implied covenant of good faith and fair dealing is that she was wrongfully discharged after nineteen years of satisfactory performance. This claim is not separate and distinct from her claim of wrongful discharge. Consequently, Mysse's claim for breach of the implied covenant of good faith and fair dealing is barred by § 39-2-913, MCA, of the WDFEA. Furthermore, because Mysse did not allege any damages arising from this breach separate from the damages arising out of her discharge, the complaint is insufficient to indicate a separate claim. See Beasley, 853 P.2d at 86. Therefore, the District Court did not err in granting summary judgment.

## Conclusion

The District Court's summary judgment order dismissing Mysse's 42 U.S.C. § 1983 claim, the wrongful discharge claim, and the age discrimination claim is affirmed. We further hold that Mysse's

19

claim for a breach of the implied covenant of good faith and fair dealing was not only insufficiently pled but is barred by § 39-2-913, MCA, of the WDFEA.

_____
                            Justice

We concur:

_____
            Chief Justice

_____

_____

_____
                 Justices

November 14, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

K.D. Peterson
Peterson and Schofield
2906 Third Avenue North
Billings, MT  59101

Steven J. Lehman
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT  59103-2529

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy