No.  96-598

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

NELSON SEELEY,

Plaintiff and Appellant,

v.

GARY DAVIS and WALTER MURFITT,

Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

For Respondent:

P. Keith Keller, Keller, Reynolds, Drake, Johnson & Gillespie,
Helena,
Montana

Submitted on Briefs: May 1, 1997

Decided:    October 3, 1997
Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Appellant Nelson Seeley (Seeley) filed suit in the First Judicial District Court,
Lewis and Clark County, alleging that Respondents Gary Davis (Davis) and Walter Murfitt (Murfitt) cost him the opportunity to purchase a commercial property in Helena,
Montana.  Seeley contended that the actions of Davis and Murfitt constituted legal malpractice and that he incurred damages due to their alleged malpractice.  After discovery, Davis and Murfitt moved the District Court for summary judgment, asserting no genuine issues of material fact existed and they were entitled to summary judgment as a matter of law.  The District Court granted the motion, concluding the facts presented unequivocally indicated that Davis and Murfitt had fulfilled the duty of care owed to their client Seeley.  Seeley appeals.  We affirm.

The sole issue presented on appeal is whether the District Court erred in granting summary judgment in favor of Davis and Murfitt.

Davis and Murfitt are attorneys practicing law in Helena, Montana.  Seeley is also an attorney, although not in practice.  Seeley is the owner of several commercial and rental properties in Helena.

In 1990, Lewis and Clark County (the County) acquired possession of  the Placer Center in Helena after the buildingþs previous owner failed to pay the property taxes.
After taking title, the County twice attempted to sell the Placer Center at auction but received no bids.  Seeley, who was interested in purchasing the building, attended both auctions but did not bid.  After failing at the second auction to receive any bids at the listed price, the County announced that it would next accept sealed bids for the property.

On or about Friday, November 9, 1990, Seeley determined that he wanted to buy the building without waiting for the sealed-bid process.  He therefore offered to buy the building for the price set at the second auction.  In discussing the proposed sale with County Commissioner Linda Stoll-Anderson (Stoll-Anderson), Seeley suggested drawing up an earnest money agreement and giving the County a nonrefundable deposit of $1000 to hold the building for one week.  Then, by the following Friday, Seeley would either tender the balance of the down payment or decide not to proceed with the sale, in which case the County would keep the $1000 earnest money deposit.  Stoll-Anderson agreed to this process, and an earnest money agreement was prepared.  Seeley did not immediately sign the agreement or tender the $1000; instead, he advised Stoll-Anderson that he was giving the earnest money agreement and deposit to his attorneys, Murfitt and Davis,

who would give the documents to her on Tuesday morning after reviewing the buildingþs history and checking the title. (Tender of the deposit and the agreement was set for Tuesday morning instead of Monday morning because Monday was a holiday.) Stoll-Anderson agreed to accept the earnest money agreement on Tuesday, but advised Seeley that she did not consider the County obligated to "hold" the building for him in the absence of a signed agreement. She further advised him the building was subject to sale on a "first-come, first-served" basis until she received a signed earnest money agreement or a signed contract for sale.

Seeley then took the earnest money agreement and deposit check to the offices of Murfitt and Davis. He directed them to check the buildingþs history for liens or "other complications" so serious that he might not want to finalize the purchase. Assuming none were found, Murfitt and Davis were to take the deposit and signed earnest money agreement down to Stoll-Anderson on Tuesday morning. Seeley was aware that the County offices would be closed until Tuesday morning due to the three-day holiday weekend. Having dropped off the paperwork with the attorneys on Friday, Seeley left for the weekend to go hunting in Canada.

On Monday, Seeley called to check in with Davis. Davis reported that he was having an informal title search done and that he expected a telephone report on it the next morning. Seeley reiterated his interest in the building and contends that he directed Davis to present the earnest money agreement and deposit to Stoll-Anderson first thing Tuesday morning. Davis contends that his understanding was that he would deliver the documents as soon as he received the informal title report, provided no major problems with the title were found.

By early Tuesday morning, Stoll-Anderson had not received the deposit and agreement. She called Davis to ask whether the documents were going to be delivered and he told her that he would take care of it. At about 10 oþclock Tuesday morning, the building was sold to a third party. Davis and Murfitt were still waiting for the title report.

Seeley learned that the building had been sold to someone else when he returned from hunting in Canada. He filed suit against Davis and Murfitt, alleging that their failure to deliver the earnest money agreement and deposit resulted in his loss of the opportunity to buy the building and constituted legal malpractice. Davis and Murfitt responded that they had fulfilled their duty of care to their client and had followed Seeleyþs instructions in waiting for the title report. After discovery, Davis and Murfitt moved for summary judgment, which the District Court granted. Seeley appeals.

The sole question presented on appeal is whether the District Court erred by granting summary judgment in favor of Davis and Murfitt. This Court reviews the

grant or denial of summary judgment rulings de novo. Mysse v. Martens (Mont. 1996), 926 P.2d 765, 769, 53 St.Rep. 1139, 1140-41 (citing Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When reviewing a district court's grant of summary judgment, this Court applies the same criteria as the district court based on Rule 56, M.R.Civ.P. Mysse, 926 P.2d at 769 (citing Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903). Further, in order for summary judgment to be granted:

the movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

Bruner, 900 P.2d at 903. This Court reviews the legal determinations made by a district court to determine whether the court erred. Mysse, 926 P.2d at 769.

In this case, Seeley contends that the District Court erred in finding that no genuine issues of material fact existed. Seeley argues that several important factual points remain in dispute which should have precluded a grant of summary judgment.

First, the District Court found that Seeley had instructed Davis and Murfitt to deliver the agreement and check to the County on Tuesday after they had investigated any possible complications with the title to the building. Seeley contends this finding is erroneous, or at the least contested, because he asserts that his clear understanding with the attorneys was that the earnest money and agreement had to be delivered first thing Tuesday morning, regardless of the status of the search or whatever defects the attorneys may have discovered. Second, the District Court found that Davis and Murfitt did not know that time was of the essence in delivering the earnest money agreement, or that a third party was seriously interested in purchasing the building. Seeley contends this is erroneous, or at least contested, because Stoll-Anderson recalled informing the attorneys that other parties were also interested in the building when she called their office on Tuesday morning and because Seeley had directed the attorneys to tender the agreement and check to Stoll-Anderson first thing Tuesday morning. Seeley therefore contends that genuine issues of material fact remain regarding the partiesþ representations and intentions. Such factual issues, Seeley argues, indicate that summary judgment was inappropriate in this case.

After reviewing the record in its entirety, we cannot agree that the findings in question are subject to attack. No genuine issue of material fact exists regarding the

representations and intentions of the parties.  A reading of the record leaves but one reasonable interpretation of events, which was the interpretation adopted by the District Court in its findings of fact.  Seeley seeks to create a genuine issue of material fact by asserting that his instruction to Davis and Murfitt to check the buildingþs title for major defects was secondary to his instruction that they deliver the earnest agreement and check to the County first thing Tuesday morning.  Common sense indicates, however, that if Seeleyþs intent was to secure his right to purchase the building regardless of the status of the title, he could have tendered the check and agreement to Stoll-Anderson himself on Friday, before leaving for Canada.  Instead, he transferred the documents to the attorneys, with instructions to investigate the title for major problems.  Furthermore,  Seeleyþs assertion that he told the attorneys to tender the check and agreement without waiting for the results of the preliminary title search is contradicted by his deposition testimony.  In his deposition, Seeley testified that, before leaving town on Friday, he instructed Davis to "check on the status of the title" and told him "[t]hat I was going to buy the building unless he came up with something before Tuesday, before we presented the check back, that would say donþt buy it."  (Emphasis added.)  Seeley further testified that he had called Davis on Monday morning and told him "I had done a lot of staying awake nights thinking about [the building], what Iþd do with it, and I wanted it unless there was a complication, and the property is a good value, I definitely want it, and get that check up to [Stoll-Anderson] unless you have something."  (Emphasis added.)  In addition, Seeley admitted in his deposition that he himself was unaware that a third party was also seriously interested in buying the building.  Likewise, Davis and Murfitt also were unaware of the third partyþs interest until after the building was sold.

The depositions in this case indicate that neither party was aware of any great urgency in tendering the check and agreement due to the possibility a third party might step in and buy the building on Tuesday morning.  The parties do not dispute that the check and agreement were to be delivered to Stoll-Anderson Tuesday morning.  They dispute only whether the check should have been delivered before receipt of the title report.  Seeley insists he directed Davis and Murfitt to tender the documents first thing Tuesday morning.  Davis and Murfitt contend they were told to deliver the documents as soon as possible after receiving the informal title report.  As noted above, Seeleyþs

contention is contradicted by his own deposition testimony.  The District Court correctly found that the question of when the documents were to be delivered was not a genuine issue of material fact which would defeat the motion for summary judgment.

Seeley next contends that even if Davisþs and Murfittþs actions were not willfully negligent, the parties nevertheless did not have a mutual understanding of what Seeley expected the attorneys to accomplish.  He contends that the failure of the attorneys to discover his intentions, as well as their failure to avoid the misunderstanding by setting forth what they intended to do and when, constituted legal malpractice.

The District Court, however, found no such misunderstanding.  Rather, it found that  Seeley instructed Davis and Murfitt to investigate the title to the building before tendering the earnest agreement and deposit.  The attorneysþ duty to do so did not change just because a third party bought the building before the title investigation was completed, especially considering that neither Davis, Murfitt, nor Seeley were aware of the third partyþs interest until after the sale.  Given Seeleyþs extensive real estate background and legal training, there was no reason to believe he did not understand what he had asked of Davis and Murfitt.

When reasonable minds could reach but one conclusion, questions of fact may be decided as a matter of law.  Mills v. Mather (1995), 270 Mont. 188, 194, 890 P.2d 1277, 1281.  The District Court concluded no genuine issues of material fact existed in this case and summary judgment was proper as a matter of law.  The District Court did not err in so concluding.

Affirmed.

/S/  WILLIAM E. HUNT, SR.


We Concur:

/S/  J. A.  TURNAGE
/S/ JEFFREY H. LANGTON
District Judge, sitting for Justice
W. William Leaphart
/S/ ROY C. RODEGHIERO
District Judge, sitting for Justice
Jim Regnier


Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

I conclude that there are genuine factual issues regarding the nature of the

services

the defendants were retained to perform and whether they exercised reasonable care in the performance of those services. The District Court erred by resolving factual issues and setting forth its findings as if they were undisputed facts. The majority's opinion does the same thing.

Seeley's cause of action is based on his contention that on Friday, November 9, 1990, he delivered to the firm of Luxan and Murfitt a signed earnest money agreement and a draft in the amount of $1000 to secure his right to purchase the Placer Center in Helena, Montana, on or before November 16, 1990. He contends that he asked the law firm to see if there were any liens against the building, or other complications that would make purchase of the building inadvisable, but that the firm was specifically instructed that if no problems were discovered by the beginning of business on Tuesday morning, the earnest money and the written agreement were to be delivered to Linda Stoll-Anderson so that the right to purchase the building could be secured while further investigation was conducted. He contends that it was his plan that if problems were discovered after his earnest money in the amount of $1000 was delivered, but before purchase of the building was accomplished, he was prepared to forfeit his earnest money. However, he did not want to lose the opportunity to purchase the building, and it is his contention that he made that clear to his attorneys.

It is also Seeley's contention that after he left town, his attorneys failed to perform as they had been instructed, did not deliver the earnest money or the written agreement on time, and, therefore, that he lost the opportunity to profit from the purchase of the Placer Center.

The District Court entered summary judgment for the defendants based on its finding that the following facts were true:

1.      That Seeley told his attorneys to deliver the agreement and check to the County only after they investigated possible complications with the title to the building; and

2.      That at no time did Seeley advise his attorneys that time was of the essence in performance of the services they were retained to perform.

Based on these findings, the District Court concluded that the defendants did not breach their duty to Seeley and, therefore, are entitled to judgment as a matter of law.

The majority opinion accepts the same findings as undisputed facts and arrives at the same conclusion. However, the nature of Seeley's instructions to his attorneys and, therefore, the nature of their duty to him, is factually disputed based on the record before

us.

For example, Nelson Seeley filed an affidavit in opposition to the defendants' motion for summary judgment in which he testified to the following facts:

2. On Friday, November 9, 1990, Linda Stoll-Anderson agreed to let me have over the weekend to have my lawyers consider matters pertaining to title. Linda Stoll-Anderson knew that I had taken the earnest agreement which I signed in her presence, which had been prepared by the County in consultation with one of its deputy county attorneys, and my signed check of $1000 earnest money and delivered it to the defendants. Linda Stoll-Anderson said she would sign the earnest agreement when it was delivered by Mr. Davis and indicated that that was acceptable but they would need the check and earnest agreement first thing Tuesday morning (November 13, 1990).

3. I then delivered the earnest agreement and $1000 check to the defendants (Gary Davis) and told them precisely of my meeting with Linda Stoll-Anderson and that the check and earnest agreement needed to be delivered to the County first thing Tuesday morning. I understood my attorneys would have some time, at least until first thing Tuesday morning, to look at title issues. They indicated in my conversations with them on Friday, November 9, and Monday, November 12, that they had not found any difficulties or problems, vis-a-vis title. Indeed, Mr. Davis told me on Monday, November 12, 1990, that because the building had been condominiumized such was a real advantage for me.

4. While a specific time, such as 8:01 a.m. or 8:02 a.m., was not specified to Mr. Davis or Mr. Murfitt, I made it very, very clear that they needed to make sure that the check and earnest agreement were delivered to the County first thing Tuesday morning, not 10:00 a.m.; not 12:00 noon. Neither of the defendants ever asked me for any more specificity, but both seemed to understand precisely what I was telling them.

. . . .

6. I never asked the attorneys to do what would be tantamount to an abstract of title, which is what they seem to suggest in their brief (page 10). I simply wanted them to double check to see if there were some other liens against the building that we may not be aware of otherwise and I know Mr. Davis was doing that on Friday, 11/9/90, because he told me he had done so. We also specifically discussed and the attorneys concede that in the earnest agreement we had until Friday, 11:59 a.m., to go any further with the purchase of the building but that in the meantime by delivering the earnest agreement and check to the County first thing Tuesday morning the building would be secured for me.

. . . .

8. . . . There certainly was a time constraint given to my attorneys. If the defendants did not give one to the person at the title company that was their fault, not mine.

Seeley's affidavit directly contradicts the District Court's findings which are again set forth as fact in the majority opinion. The factual issues raised by his affidavit, and his deposition testimony to the same effect, were sufficient, without more, to overcome the defendants' motion for summary judgment. However, his version of events was also corroborated by former County employees. Renee Podel stated in her affidavit that in November 1990 she was the executive secretary for the County Commissioners. The earnest agreement was prepared on her computer. She recalled Seeley's meeting with Linda Stoll-Anderson on the afternoon of November 9, 1990, and recalled him telling Stoll-Anderson of his intention to buy the Placer building. She also stated that on Tuesday, November 13, she remembered that Stoll-Anderson left the County Commission meeting and upon her return seemed upset that the earnest agreement and check had not yet been delivered. She quoted Stoll-Anderson as saying "I don't understand why they haven't been delivered yet." Stoll-Anderson testified that it was during this break during the County Commission meeting that she called the Luxan and Murfitt firm and advised Murfitt that another party was coming to purchase the property and that it would be sold on a first-come, first-served basis.

Mary Ann Gregory stated by affidavit that on November 9, 1990, she was an administrative secretary at the Lewis and Clark County offices. She recalled overhearing a conversation between Seeley and Stoll-Anderson on that date in which Seeley expressed his interest in purchasing the Placer Center and offered to give Stoll-Anderson a check for $1000 and the earnest agreement. She then related the following conversation:

> She [Stoll-Anderson] told him that she did not need the check and agreement at that time but she needed to have them first thing Tuesday morning. Mr. Seeley told Linda that he was going to give the check and agreement to his attorney, Mr. Murfitt. Linda Stoll-Anderson said that would be fine but again to make sure she got the agreement and the check first thing Tuesday morning and she would sign the agreement and present it to the Commission. I also heard Linda Stoll-Anderson tell Mr. Seeley that buying the building was a "first-come, first-served" situation.
>
> I remember Linda Stoll-Anderson calling an individual whom she referred to as Howdy Murfitt during a break in the meeting on Tuesday, November 13, 1990. . . . I also remember Linda Stoll-Anderson told this person that he (Howdy) better hurry up and get the check and agreement to her or Mr. Seeley would lose his interest in the building. She also told him (Howdy) it was first-come, first-served. It was a very short conversation after which Linda Stoll-Anderson returned to the meeting room.

(Emphasis added.)

The majority opinion states that:

> [I]f Seeley's intent was to secure his right to purchase the building regardless of the status of the title, he could have tendered the check and agreement to Stoll-Anderson himself on Friday, before leaving for Canada. Instead, he transferred the documents to the attorneys, with instructions to

investigate the title for major problems.

The answer to that observation is, first of all, that it is simply an argument regarding weight to be given to Seeley's testimony.  It is not this Court's function when reviewing summary judgments to weigh conflicting evidence.  Furthermore, Seeley fully explained why he put off delivering the earnest agreement until Tuesday morning.  He testified that if there were obvious problems with the building that could be detected between Friday afternoon and Tuesday morning, it would have been his preference to avoid losing the $1000, but that if no major problems were detected during that time, he was willing to risk the $1000 rather than risk losing the building itself.  I find nothing illogical about that approach, and neither is it inconsistent with Seeley's basic claims.

In addition to the testimony cited in the preceding paragraphs, Joel Guthals, a licensed attorney who practices in Billings with an emphasis in the areas of business and commercial law, expressed his opinion by deposition that the defendants did not exercise a reasonable degree of professional care and skill in the performance of their services for Seeley.  His opinion was based on the deposition testimony of the parties and other persons involved in the real estate transaction.

Even assuming that all of the cited testimony is controverted, there are, at most, seriously contested issues of fact related to the liability of the defendants.  It is not appropriate to resolve issues of fact by summary judgment.  Summary judgment should be granted only where there are no issues of fact and where a party is entitled to judgment as a matter of law.  The issues and facts in this case are very clearly defined.

Seeley's claims are supported by substantial evidence and the District Court's conclusion to the contrary should be reversed.

For these reasons, I dissent from the majority opinion.

/S/  TERRY N. TRIEWEILER