No. 01-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 133N

KENNETH ANTHONY ALLEN,

        Plaintiff and Appellant,

  v.

MIKE MAHONEY, WARDEN, MONTANA
STATE PRISON, et al.,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Third Judicial District,
                       In and for the County of Powell,
                       Honorable Ted Mizner, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

                Kenneth Anthony Allen, Pro Se, Deer Lodge, Montana

        For Respondents:

                Matthew S. Robertson, Special Assistant Attorney General, Montana
                Department of Corrections, Helena, Montana

                      Submitted on Briefs:  December 20, 2001

                                    Decided:  June 18, 2002

Filed:

                   _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     The Appellant, Kenneth Anthony Allen (Allen), filed a 42 U.S.C. § 1983 Civil Rights complaint alleging violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution.  The District Court for the Third Judicial District, Powell County, dismissed Allen's complaint, concluding that Allen did not allege that he was a member of a suspect class for which relief is available under a civil rights claim and concluding that the complaint did not allege with specificity how the acts of the individual defendants denied Allen his constitutional rights while acting under the color of state law. We affirm.

*ISSUE*

¶3     **Did the District Court properly dismiss Appellant's complaint and amended complaint?**

*STANDARD OF REVIEW*

¶4     A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

2

relief. **The rules encourage disposition of cases quickly and on the merits. Close scrutiny should therefore be given when one party moves to have the case disposed of on grounds other than the merits.** *Rambur v. Diehl Lumber Co.* **(1964), 144 Mont. 84, 394 P.2d 745.**

¶5 A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., admits all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. *Bar OK Ranch, Co. v. Ehlert*, 2002 MT 12, ¶ 31, 308 Mont. 140, ¶ 31, 40 P.3d. 378, ¶ 31 (citation omitted). **The court is not engaged in factfinding when ruling on a motion to dismiss. Any evidence actually adduced in support of a party's position in a motion to dismiss is of no consequence when reviewing the appropriateness of the lower court's denial of said motion made prior to a hearing or trial. See** *Flemmer v. Ming* **(1980), 190 Mont. 403, 408, 621 P.2d 1038, 1041.**

¶6 The District Court's determination that Allen's complaint and amended complaint failed to state a claim is a conclusion of law. Our standard of review of a district court's conclusions of law is whether the tribunal's interpretation of the law is correct. *Ehlert*, ¶ 31.

*BACKGROUND*

¶7 Because upon a motion to dismiss all allegations of fact in the complaint are to be taken as true, the following facts are taken from the complaint and attached exhibits.

¶8 Allen is an inmate at the Montana State Prison. On July 3, 1999, approximately 120 inmates at the prison participated in a sit-down demonstration in an area called the high-side yard, an area located between the high-side kitchen and three high-side housing units. Also located adjacent to the high-side yard are the front doors of the high-side gymnasium. At the start of the demonstration a number of inmates exited the front doors of the gymnasium and from outside the recreation yard to join the demonstration. Those in the gymnasium who wished not to participate exited the rear doors and walked into an area called the Reception Unit.

¶9 Allen had informed prison officials approximately a day or two prior to the demonstration when it was going to take place, and informed numerous correctional officers that he himself would not be participating in the demonstration. At the start of the demonstration, Allen was on break in front of the high-side kitchen and immediately re-entered the kitchen upon seeing the other inmates assembling. Like the high-side gymnasium, the high-side kitchen also contains front and rear exits. Allen and the other inmates in the kitchen were not given the opportunity to exit through the rear doors which lead, a few hundred feet away, to the same Reception Unit near the rear of the high-side gymnasium. Rather, the rear doors of the kitchen were locked by correctional officer Thomas Gildebrandt for the safety of the inmates and overall security of the prison. The kitchen inmates were then instructed by correctional officer Wayne Lubbes to exit the front

4

doors of the kitchen into the high-side yard, cross through the sit-down demonstration, and return to the high-side housing units.

¶10  The kitchen inmates, including Allen, exited the front doors of the kitchen, but because of threats by the demonstrators if they attempted to cross through the demonstration, the kitchen workers did not pass through but sat down on the grass nearby.  For fear of his own personal safety, Allen also sat down near the demonstration rather than attempting to pass through it.

¶11  A short time after the beginning of the demonstration, a prison official, Captain Geech, requested that two inmates from each unit come to the high-side security gate to speak with prison staff about inmate concerns.  Upon a vote of the inmates in Allen's housing unit, Allen was elected to be the representative on behalf of his unit.  At this point, Allen actively participated in the demonstration as their representative.

¶12  Subsequently, all inmates who were involved in the demonstration were placed in temporary lock-up pending disciplinary hearings.  The MSP hearing officers eventually dismissed the disciplinary write-ups of each of the high-side kitchen inmates other than Allen.  The Unit Disciplinary Team originally scheduled Allen's hearing for July 12, 1999.  On that day, Allen was granted a continuance until July 21, 1999, for the purpose of collecting staff witnesses and statements to attest that Allen did not want to participate in the demonstration or leave the security of the high-side kitchen.

**Comment [COMMENT1]:** Taken out of fact section because neither the complaint or amended complaint contain a due process challenge, only 8th and 14th:

Of the workers originally in the high-side kitchen, seven had their disciplinary write-ups dismissed.  The Unit Disciplinary Team originally scheduled Allen's hearing for July 12, 1999.  On that day, Allen was granted a continuance until July 21, 1999, for the purpose of collecting staff witnesses and statements to attest that Allen did not want to participate in the demonstration or leave the security of the high-side kitchen.  Allen's hearing was subsequently held on July 19, 1999, prior to having the opportunity to collect and therefore present staff witnesses and statements.

5

¶13  Allen's hearing was subsequently held on July 19, 1999, prior to having the opportunity to collect and therefore present staff witnesses and statements.  The hearing officers found Allen guilty. His disciplinary infraction report and subsequent hearing decision reflects that Allen actively participated in the sit-down demonstration through the representation of his unit, that he refused orders from prison officials to return to his housing unit, that he made demands of the administration during the demonstration, and that his actions were disruptive and interfered with the operation of the Montana State Prison.  Each of these activities constitute "severe category" violations of the Montana State Prison Policy and Procedures and Allen's determined violations resulted in a subsequent one- to two-year sentence to the maximum security unit.

¶14  Allen filed a 42 U.S.C. § 1983 Civil Rights complaint in October of 2000 against Mike Mahoney, Warden of the Montana State Prison.  The caption of the complaint contained only the name of Mike Mahoney, in his official capacity as Warden of the Montana State Prison, but also included a section entitled "Parties" wherein Allen named twenty-one additional defendants, suing each in their individual capacities and alleging that their actions were done under color of state law.  Allen alleged in his complaint that prison officials violated his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to equal protection of the laws.  Allen also alleged a Due Process violation

6

because of his inability to present statements from witnesses and staff during his disciplinary hearing.

¶15 Allen sought from the District Court an order expunging and dismissing the disciplinary write-ups from his institutional record, an order requiring an immediate reclassification evaluation, and compensatory and punitive damages against correctional officers Gildebrandt and Lubbes and from "all of the defendants, and/or, whomever the Court deems responsible for the safety of the inmates in the kitchen."

¶16 **Did the District Court properly dismiss the Appellant's complaint and amended complaint for failure to state a claim under 42 U.S.C. § 1983?**

¶17 Allen bases his claim against Mahoney and other named individuals on 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the other party injured in an action at law, suit in equity, or other proper proceeds for redress. . . .

In order to state a sustainable § 1983 claim, the plaintiff must allege facts to establish: (1) a violation of rights protected by the United States Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law. *Orozco v. Day* (1997), 281 Mont. 341, 347, 934 P.2d 1009, 1012 (citation omitted).

¶18   The State argues that Allen's original and amended complaints are facially insufficient because, although only Mike Mahoney is listed in the caption, neither complaint alleges any specific act or conduct on the part of Mahoney and, in fact, both are completely silent as to Mahoney other than the appearance of his name in the captions.   The State argues that, in failing to assert any factual allegations that Mahoney acted or failed to act, the complaints fail to state a cognizable claim under 42 U.S.C. § 1983.   See *Potter v. Clark* (7th Cir. 1974), 497 F.2d 1206, 1207.   The State further argues that the complaint did not allege that any particular defendant acted under the color of state law for the purposes of 42 U.S.C. § 1983.

¶19   Allen argued before the District Court that, although the complaint is silent as to Mahoney other than his name in its caption, specific factual allegations were not necessary because one could implicitly read into the complaint that Mahoney's inaction allowed the high-side kitchen inmates to be treated differently than the high-side gymnasium inmates.   Allen specifically argues that Mahoney "failed to act by not authorizing the Correctional Officers in the high side dining area to afford the inmates of the kitchen the same equal protection that was afforded to the inmates in the gym by being 'allowed' to exit the rear of the building and subsequently avoiding the ongoing demonstration."   This implicitly authorized disparate treatment, Allen argues, allowed correctional officers to treat the kitchen inmates differently than the gymnasium inmates, thereby violating

8

Allen's right to receive equal protection of the laws. In other words, Allen argues that alleged actions by other correctional officers sufficiently implicates wrongdoing by Mahoney.

¶20 It is well settled that Montana's Rules of Civil Procedure are notice pleading statutes and that, pursuant to Rule 8(a), M.R.Civ.P., a complaint must put a defendant on notice of the facts the plaintiff intends to prove, and such facts must disclose the elements necessary to make the claim. *Kunst v. Pass*, 1998 MT 71, ¶ 35, 288 Mont. 264, ¶ 35, 957 P.2d 1, ¶ 35 (citation omitted). This Court follows the general rule that complaints are to be construed in a light most favorable to the plaintiff. However, this Court has also recognized that a complaint must state something more than facts which, at most, would breed only a suspicion that a plaintiff has a right to relief. "Liberality does not go so far as to excuse omission of that which is material and necessary in order to entitle relief." ***Mysse v. Martens* (1996), 279 Mont. 253, 266, 926 P.2d 765, 773 (citing *Treutel v. Jacobs* (1989), 240 Mont. 405, 407, 784 P.2d 915, 916).** The complaint must give notice to the defendant of the facts the plaintiff intends to prove, "and the facts must disclose the presence of all the elements necessary to make out the claim." *Mysse*, 279 Mont. at 266, 926 P.2d at 773 (citations omitted).

¶21 Because neither Allen's original nor his amended complaint set forth facts regarding specific actions or inactions by Mahoney, neither could Mahoney be put on notice of the facts Allen intends to prove at trial to support his constitutional claims against Mahoney under § 1983. Even under this Court's wide latitude and

9

allowances given to pro se litigants, such latitude and flexibility cannot be so wide as to prejudice the other party or to deprive the party from whom relief is sought an opportunity to respond. See *First Bank (N.A.) - Billings v. Heidema* (1986), 219 Mont. 373, 376, 711 P.2d 1384, 1386. As Allen's complaint contained no factual allegations against Mahoney, Mahoney could not have reasonably been afforded an opportunity to respond. We conclude, therefore, that the District Court did not err in dismissing Allen's complaint because it did not allege with specificity how the actions or inactions of Mahoney denied Allen his constitutional rights while acting under the color of state law.

¶22 On appeal, however, Allen asserts that the real crux of his complaint was against correctional officers Thomas Gildebrandt and Wayne Lubbes, rather than against Mahoney, and that his complaint names both officers and sets forth sufficient factual allegations regarding both. Although the caption of the complaint includes neither Gildebrandt nor Lubbes, Allen argues that both officers were properly pled defendants because, although not included in the caption, they were included in the "Parties" section with nineteen other defendants.

¶23 Whether or not Gildebrandt and Lubbes were properly pled, Allen's complaint likewise lacks sufficient factual allegations against the officers to defeat a motion to dismiss. Reducing Allen's well pleaded facts to their essence and precluding all legal conclusions, Allen seeks relief because, as an informant, he was not allowed to remain in the high-side kitchen, away from

10

exposure to the sit-down demonstration, similar to the inmates in the high-side gymnasium. He further seeks relief because his disciplinary write-ups were not dismissed like the other kitchen workers who did not actively participate in the demonstration, and because he was not given his full extension of time to present witness statements regarding his initial unwillingness to participate.

¶24 According to Allen's complaint, correctional officer Gildebrandt locked the rear door of the kitchen and correctional officer Lubbes ordered the kitchen workers to exit the front of the kitchen, proceed across the demonstration, and return to the high-side housing units. It is based upon these facts in the context of Allen's status as an informant that Allen asserts both an Eighth and Fourteenth Amendment violation of his rights. Allen alleges that Lubbes' order to exit the front of the kitchen was malicious and sadistic and that he therefore acted with deliberate indifference, resulting in Allen becoming an unwilling participant in the sit-down demonstration.

¶25 However, not every government action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. "After incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albert* (1986), 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251, 260 (citations omitted). To be cruel and unusual punishment, "conduct that does not purport to be punishment at all must involve more than ordinary

11

lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1078, 89 L.Ed.2d at 260.

¶26 Likewise, as this Court has previously stated, the type of "deliberate indifference" which violates the Eighth Amendment Cruel and Unusual Punishment Clause is "obduracy and wantonness, not inadvertence or error in good faith . . . ." *Jellison v. Mahoney*, 1999 MT 217, ¶ 12, 295 Mont. 540, ¶ 12, 986 P.2d 1089, ¶ 12 (citing *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084, 89 L.Ed.2d at 260-61).

"Prison officials are accorded 'wide ranging deference' in adopting and executing policies to preserve internal order and discipline among the inmates . . . ." *Jellison*, ¶ 12 (citing *Whitley*, 475 U.S. at 321-22, 106 S.Ct. at 1085, 89 L.Ed.2d at 262).

> That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgement for that of officials who have made a considered choice.

*Whitley*, 475 U.S. at 322, 106 S.Ct. at 1084, 89 L.Ed.2d at 262.

¶27 Taking the alleged facts in Allen's complaint as true, the actions of correctional officers Gildebrandt and Lubbes cannot support a finding of the type of "deliberate indifference" or "unnecessary and wanton infliction of pain" which would violate the Cruel and Unusual Punishment Clause of the Eighth Amendment, especially in light of the deference extended to prison officials attempting to restore order and security during a demonstration by

12

prison inmates and in light of the fact that Allen acknowledged the contrary in his original complaint–that the officers' motivation for their actions were for the safety of the inmates as well as for the overall security of the prison.

¶28 Similarly, regarding Allen's Equal Protection claim, Allen does not allege that the Montana State Prison had a policy of treating high-side kitchen inmates differently than high-side gymnasium inmates or that officers Gildebrandt and Lubbes somehow practiced such a policy under state authority, but only that the two groups of prisoners, however similarly situated, were treated differently for overall safety and security during an inmate demonstration. Given the wide deference given to prison officials for both preventative and restorative security measures and the prison's lack of discriminatory policy between kitchen and gymnasium inmates, Allen's Equal Protection claim must also fail upon the facts alleged.

¶29 Finally, Allen asserts a Due Process claim because the prison hearing officers granted Allen a continuance until July 21, 1999, for the purpose of collecting staff witnesses and statements, but then held his hearing two days early without allowing him the chance to collect the witnesses and statements. We first note that this Court expresses a similar dissatisfaction as in *Jellison*, where prison hearings officers failed to secure Jellison's requested witnesses according to the prison's own internal rules. As in *Jellison*, we do not countenance the apparent failure of

13

prison authorities to allow Allen his allotted extension of time and opportunity to present exculpatory witnesses.

¶30 In the present matter, however, Allen discloses in his pleading that the purpose for which he intended to present staff witnesses and statements was to demonstrate that he did not want to participate in the demonstration or leave the security of the high-side kitchen. We find that even if Allen had procured such statements prior to his reclassification hearing, such statements would have had no bearing on the factual findings of the hearings officer, namely, that Allen did participate in the sit-down demonstration as an elected representative of his housing unit, that he refused orders from prison officials to return to his unit, that he made demands on the administration during the demonstration, and that his actions were disruptive and interfered with the operation of the Montana State Prison. The fact that Allen may have originally wished to remain in the high-side kitchen to avoid the demonstration does not change the fact that he did, in fact, participate, and that his participation was the basis for the hearing officer's classification decision.

¶31 Based upon the foregoing, we conclude that the District Court did not err in concluding that Allen's complaint failed to allege with specificity how the acts of any individual defendants denied Allen his federally protected constitutional rights while acting under color of state law. The decision of the District Court is affirmed.

14

/S/ JIM RICE


We concur:


/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

15