STATE HIGHWAY COMMISSION ET AL., PLAINTIFF AND RE-
SPONDENT, v. DAVID P. VAUGHAN ET AL., DEFENDANTS AND
APPELLANTS.

No. 11691.
Decided June 8, 1970.
470 P.2d 967.

Landoe & Gary, Bozeman, H. B. Landoe (argued), Bozeman, for appellants.

Harry C. Alley (argued), Helena, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is a condemnation action by the State Highway Commission involving a 14 acre tract of land located within the city limits of Bozeman. Following a jury trial in the district court of the eighteenth judicial district before the Hon. W. W. Lessley, district judge, judgment was entered awarding the property owners $51,515 for their property. From this judgment and denial of their motion for a new trial, the property owners appeal.

Plaintiff in this action is the State of Montana, acting through the State Highway Commission. It seeks to acquire the land in question for highway purposes, condemning the entire tract and leaving no remainder. Defendants are the property owners, David P. Vaughan and Josephine W. Vaughan, his wife.

The land in question is an irregularly shaped tract of 14.17 acres located within the city of Bozeman near the city limits. This tract abuts U.S. Highway No. 10 on the south with about 1200 feet of frontage thereon. Along this frontage there is highway fill ranging from 15 to 20 feet at the westerly

end to 2 to 4 feet at the easterly end. There is a "bluff" or crest of a small hill located near the west boundary of the property. The water table is high on the tract of land in question.

There is a residence, a guest house, barns, and a granary located on the property. The entire tract is zoned "Class A, Residential" which permits residential usage up to five-family multiple dwellings. Evidence of the property owners at the trial indicated a policy by the zoning authority of zoning undeveloped lands in this manner until such time as further development was proposed at which time the zoning classification could readily be changed.

The property was purchased by the Vaughans in July 1961 for $37,500. David P. Vaughan testified concerning his purpose in purchasing the property in these words: "I bought that piece of property because it dominated the eastern approach to Bozeman and then I felt that it was an ideal location for a motel, a restaurant, or any sort of drive-in business, including retail business."

In 1962 the Vaughans installed a city sewer line on the property to service the entire tract, reserving the right to relocate the line.

Since acquiring the property, the Vaughans have used it as rental property for suburban residential purposes. They have purposely held the property off the sales market, and it has not been available for purchase.

During the course of trial, the property owners called the manager of the real estate loan department of the First National Bank of Bozeman whose testimony indicated limitations on the availability of funds for financing residential housing on the tract in question, with no corresponding limitations on commercial loans.

Evidence concerning the "highest and best use" of the property and its market value was in sharp conflict. The state's appraisers both testified that its "highest and best use"

was residential, one appraiser fixing its market value at $41,425 and the other appraiser establishing a market value of $49,000. On the other hand, witnesses called by the property owners testified that the "highest and best use" of the property was business or commercial, with the back acreage away from the highway having an additional potential for suburban homesite development. Valuations placed on the property were $125,000 by the property owner himself; $101,-000 by one independent fee appraiser; $100,371 by another independent fee appraiser; $10,000 per acre by a real estate developer; and $145 to $165 per front foot abutting the highway by a local real estate broker. All valuations were made as of August 27, 1968, the date of service of summons.

The jury returned a unanimous verdict for the property owners in the sum of $51,515 as the value of their property. Judgment was entered thereon. Subsequently the district court denied the property owners' motion for a new trial. The property owners now appeal from the judgment and from the order denying them a new trial.

The single issue upon appeal is the sufficiency of the evidence to support the verdict and judgment.

The thrust of appellants' agument is that the valuation of their property by the state's witnesses, which was substantially adopted by the jury in its verdict, is so far removed from its actual value that it denies them the "just compensation" guaranteed by the Montana State Constitution. They contend the state's valuations are incorrect in that (1) such valuations are based on residential rather than business use, (2) the state placed undue emphasis on existing zoning restrictions foreclosing proper consideration of business or commercial use, and (3) the "comparable sales" used as a basis for such valuations are not comparable at all. Accordingly, the property owners insist, the state's valuations are incredible, unworthy of belief, and do not constitute substantial credible evidence supporting the verdict and judgment. They ask

us to set aside this verdict and judgment and grant them a new trial.

On the other hand, the State Highway Commission contends that the verdict and judgment should not be set aside because it is supported by substantial credible evidence. The gist of the state's argument is that the issues of "highest and best use" and "value" are jury questions in the instant case under the conflicting evidence; that both parties fully presented their respective theories and evidence on these issues to the jury at the trial; and that the jury resolved these conflicts in the evidence largely in favor of the state.

■ ■ The scope of review by this Court on an appeal based on insufficiency of the evidence is simply to determine whether there is substantial credible evidence to support the verdict and judgment. Sumner v. Amacher, 150 Mont. 544, 437 P.2d 630; Greenup v. Community Transit Co., 145 Mont. 39, 399 P.2d 418; Wyant v. Dunn, 140 Mont. 181, 368 P.2d 917. This Court will not disturb a jury verdict and the judgment based thereon where there is substantial credible evidence supporting the verdict and judgment. Kiely Construction Co. v. State, State Highway Comm., 154 Mont. 363; 463 P.2d 888. In reviewing the evidence for this purpose, we must do so in the light most favorable to the prevailing party in the district court. Rogers v. Hilger Chevrolet Company, 155 Mont. 1, 465 P.2d 834; Strong v. Williams, 154 Mont. 65, 460 P.2d 90.

Before proceeding to review the evidence in the light of these principles, we observe that the Montana Constitution, Article III, Sec. 14 provides:

"Private property shall not be taken * * * for public use without just compensation having been first made to * * * the owner."

This constitutional requirement has been further implemented and defined by statute, section 93-9913, R.C.M.1947, as amended, providing in part as follows:

"For the purpose of assessing compensation the right thereto

shall be deemed to have accrued at the date of the service of the summons, and its actual value as of that date shall be the measure of compensation for all property * * * taking * * *."

"Actual value" as used in the foregoing statute means "market value". State Highway Comm. v. Jacobs, 150 Mont. 322, 435 P.2d 274; State Highway Comm. v. Tubbs, 147 Mont. 296, 411 P.2d 739; State Highway Comm. v. Milanovich, 142 Mont. 410, 384 P.2d 752; State v. Peterson, 134 Mont. 52, 328 P.2d 617. Such market value is based on the "highest and best use" to which the land is adaptable, whether actually so used or not. State Highway Comm. v. Jacobs, supra. However, the land must be available for such use on the date of service of summons and marketable at that time for such use. State v. Hoblitt, 87 Mont. 403, 288 P. 181.

Turning our attention to the evidence in the instant case, it is apparent that the evidence is in direct and irreconcilable conflict on the "highest and best use" of the land in question. Broadly speaking, the property owners' witnesses indicated this to be a business or commercial use while the state's witnesses viewed it as a residential use.

The property owners' first witness on this issue was Carl Tange, Jr., a real estate developer, who testified in substance that the subject property is suitable for commercial development and adapted to use as a motel complex, a supper club, a service station, or a large truck stop. Ivan Shaw, an independent fee appraiser, testified that the "highest and best use" of the property in question is commercial development, with the back acreage having a dual potential for commercial development or suburban homesite development. C. R. Steele, a real estate consultant and appraiser, indicated that the land fronting on the highway to a depth of about 300 feet has its "highest and best use" for roadside business with the back acreage for suburban development and use. The landowner himself, while not directly testifying as to his land's

"highest and best use", inferentially supported a business and commercial use by his valuation based on such use and his purpose in acquiring the property. S i m i l a r l y, Ottley Tschache, a local real estate broker, inferentially considered the "highest and best use" of the frontage on the highway to a depth of 300-400 feet as business and commercial by basing his valuation on such use.

The state's witnesses on this issue were two independent fee appraisers, Wayne Neil and Howard Sparhawk. Neil testified in substance that he had made what he described as an "area analysis" encompassing traffic count studies, sales of property and the uses to which it had been put, terrain features, zoning, an economic analysis, population trends, and planning studies. Based on this investigation, he determined that the highest and best use of the subject property was "residential acreage". His conclusion that commercial activity stopped before reaching the hill on the west end of the subject property is perhaps best summarized in this excerpt from his testimony.

"Q. And that is all involved in an area analysis, is that correct? A. Yes.

"Now, this would have been particularly the Bozeman area analysis, outside of the city limits of Bozeman and outside of the area of development, I should more properly say. I looked to see what this property was being put to use for and found, in most cases, a residential acreage, and in some cases, a lot and block subdivision property at either just within or just without the city limits, and particularly, with reference to North Seventh Street, I found that once the commercial activity had spread to the top of the hill on the old Belgrade Road it didn't go any further. It didn't go down the hill into the low land and this was particularly comparable to East Main in this respect, that the commercial activity stopped at the top of the hill."

The gist of Howard Sparhawk's testimony was that the

"highest and best use" of the subject property was "suburban residential use." This conclusion was based on his examination of the property, an economic study and investigation of the area as to real estate values and trends, growth patterns, land uses, and demand for property in the area. Basically he indicated that the pattern of growth in Bozeman was to the west out West Main Street and continued in this manner:

"A * * * A special study was made from the Vaughan property east to show what that land had been used for in the past and the types of buildings that was in that area. The study revealed that from the crest of the hill easterly towards Bear Canyon, the activity and [sic] in the past number of years has been practically zero. The use of the land in the flat-bottom area is basically agriculture. It has been used for pasture purposes and hay lands. Furthermore, at the beginning of the Vaughan property, the division line between the Vaughan property and the city, that seemed to be the breaking-off point. From that point on the development was practically nil.

"Furthermore, it shows that as to the Vaughan property, it has been in the city limits for the past 76 years. It was first brought into the city in 1892 and in 1921, it was, the streets and alleys were vacated. It shows the demand in that area, the demand for use for building construction and so forth is very weak. One of the main reasons is that it is in a low area, the ground is wet, it has a poor view—it offers no view.

"In making this appraisal, it has to be understood that an appraiser does not set values and he does not make values but all he does is interpret what the people in the market do and interpreting what people did in the market of the general area of the Vaughan property. It shows that the land is quite depressed because there has been no development in the area for higher uses."

The foregoing is illustrative of the conflict in the evidence as to the "highest and best use" of the Vaughan property.

Both parties were afforded a full opportunity to call their witnesses and introduce their evidence on this issue; all witnesses were extensively cross-examined concerning the basis of their testimony and the reasons for their conclusions on this issue; and the jury was properly instructed on the law applicable to this issue and no appeal is taken from any jury instructions given or refused. The jury resolved the conflict in the evidence by their verdict. The testimony of the state's witnesses Neil and Sparhawk constitutes substantial credible evidence supporting the jury verdict and the judgment entered thereon. Accordingly, we will not interfere.

Additionally, appellants complain that the state and its witnesses Neil and Sparhawk placed undue emphasis on the fact that the Vaughan property was zoned "Class A, Residential" thereby misleading the jury into believing that a business or commercial use was foreclosed and resulting in an erroneous verdict. Appellants argue that the evidence in the instant case shows a standard policy and practice of the zoning authority to zone undeveloped property as "Class A, Residential" until it is to be developed for some other use, in which case the existing zoning can be readily changed. We deem it unnecessary in this case to rule on the effect of zoning restrictions and changes therein as applied to condemnation proceedings as set forth in 9 A.L.R.3d 291 et seq., Nichols on Eminent Domain, 3d Ed., Vol. 4, § 12.322, p. 236 et seq.; 27 Am.Jur.2d Eminent Domain § 277, p. 66; 29A C.J.S. Eminent Domain § 160f, for the reason that no legal issue thereon is raised in this appeal.

Appellants themselves by their first witness established the existing zoning as "Class A, Residential". They called various witnesses to testify concerning the ease of changing this zoning restriction to permit business and commercial use of their property. In short, all the evidence concerning the existing zoning restrictions and changes therein was introduced by appellants themselves before any of the state's witnesses testi-

fied. Neither do appellants raise any objections to the jury instructions.

Appellants simply say that the state placed undue emphasis on the existing zoning of the subject property through witnesses Neil and Sparhawk and by argument to the jury and in their brief. Appellants, having raised the issue themselves through the testimony of their own witnesses, cannot complain if the state's counsel and witnesses reply in kind. They are simply not "a party aggrieved" on this issue within the meaning of Rule 1, M.R.App.Civ.P.

Finally, appellants complain that the "comparable sales" used by the state's valuation witnesses are not in fact comparable at all because they are not similar in location or use, they are based on properties outside the city limits, and no properties across the highway from the west end of the Vaughan property were considered. Therefore, they argue, there is no substantial credible evidence supporting their valuation.

The state's two valuation witnesses were Neil and Sparhawk. Neil testified that he used three approaches to valuation: cost, income, and market data. In the market data approach, he examined over 100 sales, selecting 9 of these as "comparable sales". This latter approach resulted in a valuation of $41,425, the cost approach resulted in the same valuation, the income approach resulted in a valuation of the subject property of $38,500. After considering and correlating all three approaches to value his overall estimate of the value of the Vaughan property was $41,425.

Sparhawk used two approaches to valuation of the subject property: the "market data" or "comparable sales" approach with adjustment for the buildings; and the original cost approach with adjustments to date. The latter yielded a figure of $49,407 while the former resulted in a valuation of $48,000. He used 5 or 6 "comparable sales" in the latter approach to valuation. Correlating the two resulting valuations, he arrived at the sum of $49,000 as the market value of the Vaughan property.

The valuation experts in their testimony brought out that any given tract of land, being a unique commodity, was not exactly comparable to any other tract of land and that the duty of the appraiser was to select sales of land as nearly comparable as possible and adjust his estimate of value of the subject property accordingly. Weaknesses in expert valuation testimony derived from comparable sales go to the weight of the expert's testimony with the jury. State Highway Comm. v. Wilcox, 155 Mont. 176, 468 P.2d 749; State Highway Comm. v. Jacobs, supra. The basis for the opinion of Neil and Sparhawk as to value and the reasons for using the "comparable sales" they used in arriving at such value was before the jury which could give such opinions the weight it deemed them entitled or could reject them altogether if it considered them unsound.

We have examined all other arguments raised by appellants in their brief and oral argument and consider them to be without merit.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN HARRISON, and DALY, concur.