No. 12340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

BUTTE COUNTRY CLUB,

                    Plaintiff and Respondent,

-vs-

METROPOLITAN SANITARY AND STORM
SEWER DISTRICT No. 1, a special
improvement district,

                    Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable James Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        Lawrence G. Stimatz, County Attorney, Butte, Montana

    For Respondent:

        McCaffery and Peterson, Butte, Montana
        John L. Peterson argued, Butte, Montana

---

                                Submitted:  January 14, 1974

                                Decided: FEB 19 1974

Filed: FEB 19 1974

*Thomas J. Kearney*
                                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by defendant Metropolitan Sanitary and Storm Sewer District.No. 1 from a judgment entered in the district court, Silver Bow County, for plaintiff Butte Country Club.

Appellant Metropolitan Sanitary and Storm Sewer District No. 1, (hereinafter referred to as Metro), was formed on December 30, 1964. The land of respondent Butte Country Club was included within the district. As part of the district's improvements it became necessary to lay a sewer line across the Country Club's land. To this end negotiations were had to obtain an easement. It is conceded by both parties that the Country Club filed a declaratory judgment action against Metro on August 4, 1965, however that action was dismissed without prejudice the following day.

On November 21, 1966, the parties executed an agreement entitled "AGREEMENT AND GRANT OF POSSESSION". Briefly, the agreement recited that: the parties were unable, in good faith, to agree on the value of the easement; the necessity for the easement was undisputed; Country Club granted Metro the right to enter and construct its line; since the value was undetermined, an eminent domain action to determine such value was a possibility; specifically provided that upon a final determination of such value, either by negotiation or litigation, Metro would pay six percent interest on that amount from the date of the agreement; and, finally, the parties agreed nothing in the agreement was to jeopardize any rights of either party under Montana statutes governing the process of eminent domain proceedings. The sole intent of the agreement was to grant possession; the only dispute being the value of the easement.

Nothing further appears in the record until July 1, 1969, when the Country Club filed a pleading entitled "Amended Complaint" under the same cause number as the original action of August 4, 1965. Service of the complaint was acknowledged by the attorney

for Metro, however no summons was ever issued. On July 22, 1969, Metro filed a motion to dismiss on the grounds the complaint failed to state a claim upon which relief could be granted. No accompanying affidavit or brief was filed. The motion was over-ruled on September 16, 1969. Thereafter Metro filed its answer on May 5, 1970. On March 14, 1972, a pretrial order approved by the attorneys for both parties was issued. Trial commenced on March 16, 1972, and the result was a verdict in the amount of $32,000 for the Country Club. Judgment was entered for that sum, plus interest and costs. From that judgment Metro appeals, presenting five issues for review.

Metro's first issue is that the trial court lacked jurisdiction to hear the case, based upon three theories:

(1). The original complaint was withdrawn, without prejudice, by the Country Club. The effect was to restore the parties to a state as though the suit had never been brought. Thus when the "Amended Complaint" was filed under the original cause number, there was nothing to amend, hence the "Amended Complaint" was a nullity. We reject this theory.

Rule 8(a), M.R.Civ.P., states:

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded."

With reference to this rule, this Court said in Brothers v. Surplus Tractor Parts Corporation, _____Mont._____, 506 P.2d 1362, 1364, 30 St. Rep. 265, 269:

"Montana rules of civil procedure, based on federal rules, are essentially notice pleading statutes rather than the more formal code or fact pleading statutes in effect in many juris-dictions."

See: Wright & Miller, Federal Practice and Procedure: Civil § 1215.

We have reviewed the "Amended Complaint" and find it satisfies the notice, as well as all other requirements of Rule 8(a), M.R.Civ.P., and is a valid, initial complaint.

(2) Assuming the "Amended Complaint must be taken as a new complaint, Metro maintains that even though service of the complaint was acknowledged, a summons was not issued. It need not have been.

(3) Metro contends the "Amended Complaint", if valid, states a claim barred by the statute of limitations, section 93-2607 (2), R.C.M. 1947. That section provides a two year statute of limitations for injury to real property. Since the "Amended Complaint" was filed on July 1, 1969, more than two years after the actual construction of the sewer line, Metro contends the statute of limitations is applicable.

Rule 8(c), M.R.Civ.P., requires the defense of the statute of limitations to be pleaded affirmatively, and if it not, it will be held to have been waived. Hansen v. Kiernan, 159 Mont. 448, 499 P.2d 787; Wright & Miller, Federal Practice and Procedure: Civil § 1278. Metro's first issue on appeal is without merit.

The second issue raised is that the Country Club waived its right to sue separately for damages because of its noncompliance with the provisions of section 16-1610, R.C.M. 1947. The procedures found in section 16-1610, R.C.M. 1947, are made applicable to metropolitan sanitary and/or storm sewer districts by section 16-4413, R.C.M. 1947. Section 16, 1610, R.C.M. 1947, requires landowners who claim that their property will be damaged by a district's improvements must file written objections with the county clerk within sixty days of the awarding of a contract for construction of such an improvement. If no written objection is filed, the landowner is held to have waived his claim for damages. Since no written objection was filed with the county clerk, Metro contends the Country Club waived its right to sue for damages.

This argument is raised for the first time on this appeal. It has long been the rule that issues not raised at the district court level will not be considered here. Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48; Davis v. Davis, 159 Mont. 355, 497 P.2d 315. This same rationale applies to Metro's third issue--that the pretrial order of the district court, approved and signed by counsel for both parties, was incomplete, misleading and prejudicial. We find Metro's second and third issues to be without merit.

In its fourth issue, Metro contends the district court's refusal to give Metro's offered instruction A was error. That instruction would have instructed the jury that the taking of the property was done under the police power of the state, which would have lead to the conclusion the Country Club was due nominal or no damages at all.

That the agreement conveyed to Metro an easement is clear. It is referred to as such in the written agreement and was so denominated by the district court in its instructions to the jury. Those instructions were not objected to. This Court has previously held that an easement is a property right within the constitutional guarantee that private property may not be taken for public use without payment of just compensation. City of Missoula v. Mix, 123 Mont. 365, 214 P.2d 212; Colarchik v. Watkins, 144 Mont. 17, 393 P.2d 786. It was not error to refuse Metro's offered instruction A.

Metro's fifth issue---that the verdict of $32,000 was excessive---is apparently based on the premise there was no valid credible evidence before the jury upon which it could base its verdict. We have said before that we will not disturb a jury verdict or a judgment based thereon, where there is substantial credible evidence to support them. State Highway Commission v. Vaughan, 155 Mont. 277, 281, 287, 470 P.2d 967.

The Country Club's primary witness was Jack McLeod, an expert witness in the field of real estate appraisal, who testified

- 5 -

that he looked at the overall market to determine what similar easements were negotiated and what they sold for in the Butte area. He testified as to the values of five easements granted to the Anaconda Company for a water line to one of its installations. These values were for easements upon different types of property, ranging from pasture land to urban property. In reaching his judgment McLeod felt the Country Club easement was worth less than those in the urban areas, but more than those found in more rural areas. It was his opinion that the easement in question was worth a total of $48,000. The foregoing is in accord with what this Court said in Vaughan:

> "The valuation experts in their testimony brought out that any given tract of land, being a unique commodity, was not exactly comparable to any other tract of land and that the duty of the appraiser was to select sales of land as nearly comparable as possible and adjust his estimate of value of the subject property accordingly. Weaknesses in expert valuation testimony derived from comparable sales go to the weight of the expert's testimony with the jury. State Highway Comm. v. Wilcox, 155 Mont. 176, 468 P.2d 749; State Highway Comm. v. Jacobs, [150 Mont. 322, 435 P.2d 274]. The basis for the opinion of Neil and Sparhawk as to value and the reasons for using the 'comparable sales' they used in arriving at such value was before the jury which could give such opinions the weight it deemed them entitled or could reject them altogether if it considered them unsound."

Here, the jury came to a result between the two extremes testified to -- $48,000 and $0. We find substantial credible evidence to support its finding and will not disturb it.

The judgment is affirmed.

John Conway Harrison
Justice.

- 6 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.