No. 97-468

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 71


DENISE KUNST and
CHARLA ERPENBACH,

Plaintiffs and Appellants,

v.

CHARLES B. PASS and
SHIRLEY A. PASS,

Defendants and Respondents.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Mike Salvagni, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Michael J. San Souci, Bozeman, Montana

For Respondent:

Steve Reida, Landoe, Brown, Planalp, Braaksman & Reida,
Bozeman, Montana


Submitted on Briefs: November 6, 1997

Decided:  March 31, 1998
Filed:

_____

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

¶1     Plaintiffs Denise Kunst (Kunst) and Charla Erpenbach (Erpenbach) (collectively "Plaintiffs") appeal from the order of the District Court for the Eighteenth Judicial District, Gallatin County, denying their post-trial motion for attorney's fees and costs.  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶2     The issues raised on appeal are as follows:

¶3     1.     Did the District Court err in denying Plaintiffs' bill of costs as untimely?

¶4     2.     Did the District Court err in denying Plaintiffs' request for attorney's fees?

FACTUAL AND PROCEDURAL BACKGROUND

¶5     Erpenbach, a tenant, and Kunst, her overnight guest, suffered carbon monoxide poisoning due to a furnace leak while staying at an apartment rented from Defendants Charles Pass and Shirley Pass.  Plaintiffs filed a four-count complaint against Defendants.  The caption of the first count alleged general negligence, and paragraph seven of that count stated that Plaintiffs were bringing that claim pursuant to § 27-1-701, MCA, and the Residential Landlord and Tenant Act, § 70-24-303(1)(d), MCA (the "Act").  The second count alleged breach of warranty of habitability and the third count alleged strict liability.  Both of those counts also referenced the Residential Landlord and Tenant Act, § 70-24-303, et seq., MCA.  Finally, the fourth count alleged res ipsa loquitur.  While that count did not reference the Act, it incorporated by reference every allegation contained within the first three counts.  Among the various damages requested, Plaintiffs requested costs of the suit and any other relief the court deemed just and proper.

¶6     The case proceeded to a jury trial on August 20, 1996.  After the presentation of the evidence, the Plaintiffs moved for a directed verdict on the liability issue pursuant to the Act.  The presiding District Court Judge Larry Moran granted their motion and held that the jury would consider only the amount of damages to be assessed.  At that same hearing, the Plaintiffs also requested costs and attorney's fees pursuant to the Residential Landlord and Tenant Act.  However, the court reserved its decision on the applicability of that Act and the attorney's fees issue until the conclusion of the trial.

¶7     The jury returned a verdict for Plaintiffs on August 22, 1996, awarding them each $5,000 in damages.  Plaintiffs filed a post-trial motion for attorney's fees and costs on September 10, 1996.  On that same date, the District Court formally entered judgment in the case. Subsequently, on December 6, 1996, the District Court held a hearing on the issue of costs and attorney's fees, and took the matter under advisement.

¶8     Before he had decided Plaintiffs' motion, District Court Judge Moran retired on December 31, 1996.  The case was thus reassigned to District Court Judge Mike Salvagni, who reheard the motion on February 14, 1997.  On March 21, 1997, the court issued an order denying Plaintiffs' request for both costs and attorney's fees.  It held that Plaintiffs' motion for costs was untimely pursuant to § 25-10-501, MCA.  The court also held that the request for attorney's fees was untimely, because Plaintiffs had not placed Defendants on notice of a claim for attorney's fees until after the court directed a liability verdict.   Finally, it held that the Residential Landlord and Tenant Act did not apply, because the Plaintiffs had not limited their cause of action to a violation of that statute, and Plaintiffs had prevailed in the directed verdict solely under the general theory of negligence.  Plaintiffs appeal.

ISSUE ONE

¶9     Did the District Court err in denying Plaintiffs' bill of  costs as untimely?

¶10   We review a district court's conclusions of law to determine whether they are correct.  Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶11   The law requires a prevailing party to file the bill of costs within five days after the jury renders its verdict.  Section 25-10-501, MCA, states:
    Bill of costs.  The party in whose favor judgment is rendered
    and who claims his costs must deliver to the clerk and serve
    upon the adverse party, within 5 days after the verdict or notice
    of the decision of the court or referee or, if the entry of the
    judgment on the verdict or decision be stayed, then before such
    entry is made, a memorandum of the items of his costs and
    necessary disbursements in the action or proceeding, which
    memorandum must be verified by the oath of the party, his
    attorney or agent, or the clerk of his attorney, stating that to the
    best of his knowledge and belief the items are correct and that
    the disbursements have been necessarily incurred in the action
    or proceeding.

¶12   In this case, the jury verdict was signed and filed on August 22, 1996. Plaintiffs filed their  motion to tax costs with a memorandum of costs nineteen days later on September 10, 1996.   Even allowing Plaintiffs two additional days for the weekend and three additional days for mailing, the Plaintiffs failed to file their bill of costs within five days of the jury verdict.  The District Court thus properly denied Plaintiffs' bill of costs as untimely.

¶13   Plaintiffs argue that at the August 22, 1996 hearing where the court granted Plaintiffs a directed verdict, District Court Judge Moran also granted them an extension of the five-day time limit when it ordered that their bill of costs should be filed within twenty days after the conclusion of trial.  But the transcript of the hearing contains no discussion about an enlargement of the time for filing the bill of costs, and the record does not reflect that such an order was ever entered.  At the December 6, 1996 hearing on the motion for

attorney's fees, Judge Moran himself did not specifically recall ever making such an order, although he conceded that it "sounds like something the Court would do," and stated that he was "not going to dispute" that he gave the Plaintiffs twenty days to file that document.

¶14   Notwithstanding the court's concession that it might have allowed the Plaintiffs' an additional twenty days, the bill of costs is untimely.  The five-day time limit provided for in the statute is mandatory: a party "must" file a memorandum of costs within five days after the verdict is entered.  Section 25-10-501, MCA.  Plaintiffs were thus tardy in filing that document.

¶15   Plaintiffs next contend that the five-day limit did not begin to run until the District Court entered the judgment on September 10, 1996.  Because they filed their bill of costs that same day, they maintain that they were thus well within the statutory time period.  But it is well-settled that where a case involves a jury trial, as opposed to a bench trial, the time period begins to run on the day following the jury verdict and not on the entry of the judgment. R.H. Grover, Inc. v. Flynn Ins. Co. (1989), 238 Mont. 278, 288-89, 777 P.2d 338, 344.  In Grover, this Court noted that in a bench trial, the judge has more latitude than a jury as to when it will render its decision.  In such a case, the time period is computed from the day the court enters its judgment, and not when the court orally announces its decision.  The oral announcement of a decision, which may be subject to changes when the court finally enters the judgment, is not comparable to the jury rendering its verdict. Thus, in a jury trial, the time limit begins to run on the day after the jury enters its verdict. Grover, 238 Mont. at 288-89, 777 P.2d at 344.  See also Rocky Mountain Enterprises, Inc. v. Pierce Flooring Carpet Barn (Mont. 1997), __ P.2d __, __, 54 St. Rep. 1410, 1417 ("[T]o claim costs under § 25-10-501, MCA, the plaintiffs had five days from the date of the jury verdict to file and serve upon the adverse party a verified memorandum of costs.")

¶16   Plaintiffs maintain that this case should be treated as a bench trial for purposes of computing the time limitations, because the District Court granted Plaintiffs a directed verdict on the liability issue.  Even so, however, the case still involved a jury trial and the jury rendered a verdict on the damages issue. When the court granted the directed verdict, it did not serve as the trier of fact, but instead directed liability as a matter of law.

¶17   We hold that the District Court did not err in denying Plaintiffs' bill of costs as untimely.

ISSUE TWO

¶18   Did the District Court err in denying Plaintiffs' request for attorney's fees?

¶19   As previously stated, the standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County, 271 Mont. at 469, 898 P.2d at 686.

¶20   In denying the Plaintiffs' motion for attorney's fees, the District Court stated that the Defendants' "liability was limited to the general theory of negligence as Judge Moran concluded."  After considering the allegations of the complaint, the directed verdict, and the jury verdict on damages, the court reasoned that Plaintiffs prevailed solely under a general theory of negligence and not under the Residential Landlord and Tenant Act, § 70-24-101, MCA, et seq.  It thus concluded that the attorney fees provision of that Act did not apply and denied Plaintiffs' motion.

¶21   We do not agree.  In rendering the directed verdict, Judge Moran did not conclude that "liability was limited to the general theory of negligence." Instead, he specifically left open the question as to whether the Residential Landlord and Tenant Act applied, and if so, whether Plaintiffs were entitled to attorney's fees under that statute.  As he stated:

> Well, that's a matter that will have to be handled after the jury trial is over.  I haven't at this time made any determination about whether the Landlord/Tenant Act applies to this case, nor whether my ruling is based upon the Landlord/Tenant Act.  So when we get around to that issue, you're going to have to bear the burden of showing the applicability of the Landlord/Tenant Act, as well as your entitlement to attorney's fees under that Act.

Before Judge Moran could rule on that  issue, he retired.  Upon review, we conclude that liability was not limited to the general theory of negligence, but also arose under the Act, § 70-24-101, MCA, et seq.

¶22   The Residential Landlord and Tenant Act provides in part:
    (1)  A landlord shall:

        . . . .

    (b)  make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

        . . . .

    (d)  maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord;

Section 70-24-303, MCA.

¶23   In this case, every single count of Plaintiffs' complaint references or incorporates by reference the Residential Landlord and Tenant Act.  Although the first count is captioned as "general negligence," the count specifically states that it is also brought pursuant to the Act, § 70-24-303(1)(d), MCA. When the Plaintiffs moved for a directed verdict, they did not do so on general negligence grounds, but instead contended that the Defendants violated the Act.  As the transcript of the hearing on that motion reveals:

[Plaintiffs' attorney]: I'd like -- at this time, I would like to move for a directed verdict on behalf of the Plaintiffs in this case. As reflected in our proposed jury instructions, as reflected in the law, referenced in our trial brief, I think that this case clearly falls under the Montana Residential Landlord & Tenant Act and, in particular, Section 70-24-303(1)(d), which, in part, provides, "A landlord shall maintain in good and safe working order and condition all heating, ventilating and other facilities and appliances supplied or required to be supplied by him."

Based upon that, based upon what are, in effect, the admissions at trial of the Defendants, the acknowledged responsibility on their part, I believe that it would be appropriate to have a directed verdict on this issue.

¶24 When Judge Moran granted Plaintiffs' motion for a directed verdict, he held that as a matter of law the Defendants failed to keep the heating system in a good and safe working order. He stated:

[T]he owners of the premises were well aware that they had a duty to inspect the premises on a routine basis, that duty and warning or admonition or advice that had been rendered first in the inspection report. And I think that that is a matter that repeats itself down through every year after the inspection report, that they should check out these matters on an annual basis.

The evidence is clear that they never checked out the premises. They never looked at the heating system. They never did anything to inspect the heating system, either personally or through the retaining services of an expert to do that.

We have then the testimony of Mr. Doug Schnell, who testifies that when he got to the premises and looked at the thing, that the boiler -- that it was in a state and a condition that an inspection of it would have -- he believes would have precluded the boiler ever to have gotten into that condition, so that there could have been the leaking of gas fumes resulting in carbon monoxide poisoning to the Plaintiffs.

The defendant has essentially come to court with no evidence that would counter that, either in weight or quantity. I feel that this is a proper case to direct a verdict of liability on behalf of the Plaintiffs, and I'll do that.

¶25 Although the court did not expressly hold that the Defendants violated the Act, the undisputed facts that form the very basis of his holding indicate that as a matter of law the Defendants breached the duty imposed by the Act to "make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition," and "maintain in good and safe working order and condition all . . . heating . . . facilities. . . supplied by the landlord." Section 70-24-303(b),(d), MCA. We thus hold that the Defendants breached their statutory duties pursuant to the Residential Landlord and Tenant Act.

¶26 Having held that the Defendants breached the duties imposed by the

Act, the next question is whether this breach exposed Defendants to liability for damages and for attorney's fees. Defendants contend that an award is not warranted because there is no precedent for a personal injury plaintiff to receive attorney's fees under the Act. Defendants are incorrect. In Calder v. Anderson (1996), 275 Mont. 273, 911 P.2d 1157, we addressed the circumstances under which a landlord could be held liable for personal injuries caused to a tenant for failing to comply with the Act. We stated that because "§ -303 of the Act was obviously intended by the legislature to be for the benefit and safety of tenants, a landlord's failure to comply with the statute is negligent per se." Calder, 275 Mont. at 278, 911 P.2d at 1160. We also repeated the well-settled holding that:

> The violation of statutes is negligence as a matter of law when the purpose of the statute is to protect a class of persons, the plaintiff is a member of that class, and the defendant is a person against whom a duty is imposed. The purpose of the statute also must be to protect against the kind of injury received by the plaintiff.

Calder, 275 Mont. at 278, 911 P.2d at 1160 (citing Nehring v. LaCounte (1986), 219 Mont. 462, 468, 712 P.2d 1329, 1333) (internal citations omitted).

¶27  In this case, Defendants, as landlords, were members of the class on whom a duty was imposed; carbon monoxide poisoning from the faulty heating system was the type of injury that the statute was designed to prevent; and Plaintiff Erpenbach, a tenant, was a member of the class the Act was designed to protect. See Calder, 275 Mont. at 279, 911 P.2d at 1160. The Defendants, however, contend that Plaintiff Kunst has no standing to enforce remedies under the Residential Landlord and Tenant Act because she was only an overnight guest of Defendant Erpenbach and was not a tenant. The Defendants cite no authority and provide no analysis to support this position.

¶28  One Montana case has touched upon the issue of a landlord's liability to third persons under the Act. Rennick v. Hoover (1980), 186 Mont. 167, 606 P.2d 1079, overruled on other grounds by Richardson v. Corvallis Pub. School Dist. (Mont. 1997), 950 P.2d 748, 54 St. Rep. 1422. In Rennick, a guest of a tenant brought suit against the landlords after he fell on an icy cement slab in the common area of the apartment building. Rennick, 186 Mont. at 169, 606 P.2d at 1080. This Court declined to address the landlord's statutory liability under the Residential Landlord and Tenant Act, because the plaintiff was not a tenant. This Court stated:

> In Montana, a landlord owes a duty to the tenant to "keep all common areas of the premises in a clean and safe condition." Section 70-24-303, MCA. However, this appeal does not involve an injury to a tenant. . . .

Rennick, 186 Mont. at 170, 606 P.2d at 1081. In making that statement, the Court provided no further analysis and it is not clear whether the issue of a landlord's liability to third persons under the Act was actually an issue on appeal. The statement constitutes dicta only and was not the holding of the Court. We thus view the issue of whether a guest of a tenant is a member of the class that the Act was intended to protect to be one of first impression in

Montana.

¶29   Upon review, we conclude that pursuant to Montana's Residential Landlord and Tenant Act, a landlord's liability is not limited to tenants, but also extends to third persons who may foreseeably be on the premises.  Indeed, the Act expressly extends its remedies to any person who is aggrieved when the landlord breaches the duties embodied in § 70-24-303, MCA.  Specifically, § 70-24-401, MCA, states that the "remedies provided by this chapter must be administered so that an aggrieved party may recover appropriate damages." The comment to the corresponding section of the Uniform Residential Landlord and Tenant Act, from which Montana's Act was substantially adopted, explains that "[t]he use of the words 'aggrieved party' is intended to indicate that in appropriate circumstances rights and remedies may extend to third persons under this Act or supplementary principles of law. . . ." Uniform Residential Landlord and Tenant Act, 7B Uniform Laws Annotated section 1.105(a).

¶30   In our view "aggrieved party" includes third persons foreseeably on the property, such as the tenant's guest, who suffers injuries when the landlord breaches the duties embodied in the Act. This Court is not alone in its interpretation of the Act.  Based upon precisely the same reasoning, the Oregon Supreme Court has also held that a tenant's guest has a cause of action against a landlord pursuant to Oregon's Residential Landlord and Tenant Act for injuries resulting from the landlord's violation of its statutory duties. Humbert v. Sellars (Or. 1985), 708 P.2d 344, 347.  The pertinent portions of Oregon's Act are substantially identical to Montana's Act.  Upon interpreting the meaning of "aggrieved party" in the Oregon Act, the Oregon Supreme Court similarly held:

> An aggrieved party includes a tenant's guest who is injured by a landlord's failure to maintain the premises in a habitable condition, if the tenant herself could recover damages for the same injury.  The measure of a "habitable condition" may be what is habitable by those who reside in the premises, but when the measure is breached, ORS 91.725 recognizes that others may suffer the consequences.  The [tenant's guest] therefore has a cause of action if she is injured because of the [landlord's] breach of the act.

Humbert, 708 P.2d at 347.

¶31   In addition to the term "aggrieved party" contained within the remedies section of the Act,  a review of § 70-24-303, MCA, itself also leads us to conclude that the duties imposed by the Act extend to third persons such as a guest of a tenant.  The comment to the section of the Uniform Residential Landlord and Tenant Act which corresponds to § 70-24-303, MCA, indicates that the standards of habitability embodied in that section extend beyond simply the contractual rights between a landlord and a tenant.  Instead, the standards involve a matter of public police power.  The comment states:

> Vital interests of the parties and public under modern urban conditions require the proper maintenance and operation

of housing.  It is thus necessary that minimum duties of
landlords and tenants be set forth.

. . . .

Standards of habitability dealt with in this section are a
matter of public police power rather than the contract of the
parties or special landlord-tenant legislation.  This section
establishes minimum duties of landlords consistent with public
standards.

Uniform Residential Landlord and Tenant Act, 7B Uniform Laws Annotated
section 2.104.

¶32  The fact that a person does not enjoy a contractual landlord/tenant
relationship with the landlord is thus not dispositive.  Rather, what is at issue
is whether the interests of public standards require that the standards of
habitability extend not only to tenants but to third persons in certain
circumstances.  We conclude that they do.  As evidence of these standards, we
turn to other areas of the law that govern the landlord's duty.  For example, in
Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 706 P.2d 491, we held
that the status of the injured party does not affect a property owner's general
duty of care.  Limberhand, 218 Mont. at 140, 706 P.2d at 496.  Instead, a
landlord's duties under § 27-1-701, MCA, extend to all persons foreseeably
on the premises, including social guests of a tenant.  Limberhand, 218 Mont.
at 145, 706 P.2d at 498, 499.  Although the Residential Landlord and Tenant
Act establishes minimum duties of the landlord, nothing in the Act limits those
duties only to a tenant, and indeed we conclude that the public interests require
those duties to extend to any person foreseeably on the premises.  In short, we
conclude that both Plaintiffs were members of the class the Act was designed
to protect, and Defendants' liability arose under the Residential Landlord and
Tenant Act, § 70-24-303, MCA.

¶33  Because liability arose under the Act, the Defendants may also be
required to pay attorney's fees.  The Act provides that reasonable attorney's
fees may be awarded to any person who prevails in an action "arising under
this chapter."  Section 70-24-442(1), MCA.  In this case, both Plaintiffs
prevailed in an action arising under the Act.  Hence, attorney's fees are an
appropriate award.

¶34  Defendants nonetheless urge this Court to affirm the District Court's
order denying attorney's fees for an additional reason.  They point to Rule
8(a), M.R.Civ.P., which requires the complaint to contain "a demand for
judgment for the relief the pleader seeks," and contend that the District Court
correctly held that Plaintiffs did not put them on notice in their complaint,
their pretrial order or their trial brief that they sought attorney's fees.  They
maintain that the first time Plaintiffs raised a claim for attorney's fees was
after the court granted a directed verdict on liability, and insist that the failure
to present this claim earlier bars their claim entirely.  We reject Defendants'
position for several reasons.

¶35  First, it is well settled that Montana's rules of civil procedure, including

Rule 8(a), M.R.Civ.P., are notice pleading statutes. Mysse v. Martens (1996), 279 Mont. 253, 266, 926 P.2d 765, 773; Butte Country Club v. Metropolitan Sanitary & Storm Sewer Dist. No. 1 et al. (1974), 164 Mont. 74, 77, 519 P.2d 408, 409. Pursuant to Rule 8(a), M.R.Civ.P., a complaint must put a defendant on notice of the facts the plaintiff intends to prove; the facts must disclose the elements necessary to make the claim; and the complaint must demand judgment for the relief the plaintiff seeks. Mysse, 279 Mont. at 266, 926 P.2d at 773; Rule 8(a), M.R.Civ.P.

¶36 In this case, the complaint does not specifically request attorney's fees. However, the complaint itself was brought pursuant to the Residential Landlord and Tenant Act. As pointed out earlier, the first count specifically states that it was brought pursuant to § 70-24-303(1)(d), MCA, and both the second and third counts specifically reference that Act. The fourth count incorporates by reference each allegation of the other counts, including the Act. Both Plaintiffs and Defendants reference the Act several times in the pretrial order, and the Plaintiffs' trial brief addresses the Plaintiffs' claim that the Defendants were liable under the Act for failing to properly maintain the heating system. The Act itself provides that attorney's fees may be awarded to the prevailing party in an action "arising under this chapter." Section 70-24-442(1), MCA. Accordingly, although the Plaintiffs did not specifically request attorney's fees, it should have been apparent to Defendants that if Plaintiffs prevailed, an award of attorney's fees was possible. Furthermore, in the complaint the Plaintiffs requested that they be awarded "other and further relief as the Court may deem just and proper." This Court liberally construes pleadings, and under this demand for general relief, the court could grant Plaintiffs any relief to which they were entitled.

¶37 Second, any claim by the Defendants of unfair surprise or that they had no opportunity to defend themselves lacks merit. The Defendants had a full opportunity to file objections to the request for attorney's fees and to be heard at oral argument as to why the Plaintiffs should not receive such an award. We conclude that the Defendants did indeed have notice and an opportunity to defend themselves.

¶38 Finally, attorney's fees may be awarded only to a "prevailing party," which "means the party in whose favor final judgment is rendered." Section 70-24-442(2), MCA. It was thus entirely proper and necessary for Plaintiffs to wait until after the court had granted them a directed verdict to file a motion for attorney's fees. See § 70-24-442(1), MCA. Plaintiffs immediately requested attorney's fees at the hearing where the court granted a directed verdict, but the court stated it would not consider the motion until a later date after the jury had rendered its verdict. Indeed the court conceded that it probably gave them twenty days after the verdict to file their motion. Montana does not have a statute that provides for a mandatory time limit for filing such a motion, such as the statute that requires the bill of costs to be filed within five days of the verdict. Section 25-10-501, MCA. In sum, we hold that the Plaintiffs' request for attorney's fees was timely.

¶39 For the foregoing reasons, we hold that the District Court erred in denying Plaintiffs' request for attorney's fees. However, the award of

attorney's fees still remains within the court's discretion.  Section 70-24-442(1), MCA.  Because the Plaintiffs' request for attorney's fees was denied for legal reasons, the court did not exercise its discretion.  We thus remand this issue to the District Court for a determination as to whether to award attorney's fees, and if so, for what amount.

¶40  Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/   WILLIAM E. HUNT, SR.

We concur:

/S/   TERRY N. TRIEWEILER
/S/   W. WILLIAM LEAPHART
/S/   JIM REGNIER
/S/   JAMES C. NELSON